## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SAMUEL LEE DARTEZ, II,

     *Plaintiff,*

vs.

     Case No. 15-03255-EFM-DJW

RICK PETERS, et al.,

     *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Samuel Lee Dartez, II brings this action against nine Kansas Highway Patrol ("KHP") officers and supervisors: Rick Peters, Robert Ware, and John Doe Nos. 1–7 (collectively the "KHP Defendants"); Riley County Police Department Detectives: Mark French, Brian Johnson, and Robert Dierks (the "RCPD Defendants"); Morris County Sheriff's Department ("MCSD") Deputies Charles Rodman and Dan Good, and MCSD Undersheriff John H. Riffel (the "MCSD Defendants"). Dartez alleges that his Fifth, Eighth, and Fourteenth Amendment rights were violated by Defendants during the course of his 2014 arrest.

Before the Court is the KHP Defendants' motion to dismiss. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion to Dismiss (Doc. 41).

## I.    Factual and Procedural Background

Dartez claims that on November 13, 2014, in Morris County, Kansas, certain Defendants used excessive force against him during the course of his arrest, others failed to intervene to prevent the excessive force, and that he was subsequently denied necessary medical care. This action originated on November 12, 2015, almost one year later. On June 2, 2016, Magistrate Judge Waxse dismissed his initial complaint, and granted Dartez 30 days in which to file an amended complaint naming proper defendants and setting forth sufficient facts which show the personal participation of each person named as a defendant in the alleged use of excessive force.

### A.    Dartez's Amended Complaint

Dartez filed the Amended Complaint on June 30, 2016, asserting multiple claims under 42 U.S.C. § 1983 against the KHP Defendants,[1] RCPD Defendants, and MCSD Defendants. Specifically, he claims that during his arrest on November 13, 2014 he was "brutally beaten . . . within an inch of [his] life" by the KHP Special Response Team.[2] Furthermore, "[n]o one from any agency or police department present came forward and/or tried to help [him] or stop" the KHP Special Response Team from "beating" him. As a result, he claims to have suffered "severe pain, swelling, dizziness, concussion, temporary blindness, & loss of motor skills, etc."

---

[1] The KHP Defendants include John Doe Nos. 1–7. For each John Doe, the Amended Complaint provides: "Defendant John Doe is a citizen of Topeka, Kansas, and is employed as KHP [tactical] team member. He was acting under the color of state law. John Doe was assigned and on duty at the time the complaint arose, and is legally responsible for his acts."

[2] The KHP Special Response Team has also been referred to as the "tactical team," and "tacticle [sic] team." For the purposes of this Order, "Special Response Team," "tactical team," and "tacticle team" are all synonymous.

In Count I, Dartez claims "[p]olice brutality and excessive use of force by the [KHP Special Response Team]." The "supporting facts" provide: "During my arrest . . . I was kicked, punched, hit with shields, slammed and jumped on excessively. Then, after I was handcuffed I was again punched, kicked and severely beaten by the [KHP Special Response Team]. While I screamed and cried for them to stop I was not violating any laws or acting disruptively in any way."

In Count II, Dartez claims that the KHP Special Response Team violated his Eighth Amendment rights causing him "pain, suffering, physical injury and emotional distress." Dartez provided the following supporting facts: "The members of the [KHP Special Response Team] severely beat and attacked me during my arrest while I was not violating any laws or behaving disruptively in any manner, and while I was screaming and crying for them to stop."

Next, in Count III, Dartez claims that his Eighth Amendment rights were violated by "all other defendants named" by "witnessing the KHP [Special Response Team's] illegal action, failing to correct that misconduct, and encouraging the continuation of the misconduct . . . ."

In Count IV, without naming the Defendant(s) against whom the claim was being brought, Dartez claims violations of his Fifth and Fourteenth Amendment rights. He specified: "By being beaten and being allowed to be beaten by the [KHP Special Response Team] during an arrest for a crime I allegedly committed I was refused my rights of due process of law as well as being innocent until proven guilty . . . ."

In Count V, Dartez claims the RCPD detectives were deliberately indifferent to his medical needs by neglecting to transport him to the hospital after his arrest. Immediately following Count V, Dartez added a provision which states: "All illegal actions listed caused me

injury to my Fifth, Eighth and Fourteenth Amendment rights and still cause pain, suffering, and

emotional distress."

Dartez then included the following request for relief:

A judgment from the court granting me a declaration that the acts and omissions described in this complaint violate my rights under the Constitution and laws of the U.S. A preliminary injunction ordering defendants from [the KHP] to complete additional training courses instructing them on how to properly subdue and arrest persons without using excessive force and causing great bodily harm. I would further ask the courts to impose a preliminary injunction suspending the officers without pay until their training is completed. I also ask for a preliminary and permanent injunction ordering the [KHP] to video and audio record all and any encounters where the [Special Response Team] and/or equivalent unit is called into any situation and/or activated or tasked to act, this is a standing injunction. I also am asking the court to grant me compensatory damages in the amount of $1,000,000 against each defendant, jointly and severally. Punitive damages in the amount of $1,000,000 against each defendant. A jury trial on all issues triable by jury. Recovery of my costs in this suit (lawyer fees if applicable as well) and any additional relief this court deems just, proper, and equitable.

## B.     Subsequent History

On August 18, 2016—41 days after filing his Amended Complaint—Dartez filed a

Certificate of Service, indicating that he delivered a copy of his First Request for Production of

Documents to the Defendants. Dartez's request for production encompassed: (1) written

statements and reports relating to his arrest; (2) medical records obtained during the time he was

incarcerated in the Riley County Jail; (3) Dartez's jail record; (4) KHP, RCPD, and MCSD rules

and regulations; (5) "any and all information on ALL persons involved in the arrest"; (6) "names

and contact information of the KHP tactical team members involved during the attack," as well

as any other personnel present during the arrest ("whether listed in the initial complaint or not or

listed as John Doe"), and anyone who has been contacted concerning the issues raised in

Dartez's complaint.

On September 13, 2016, KHP Defendants Rick Peters and Robert Ware filed a motion for extension of time to answer and to respond to Dartez's request for production. The original deadline to file the answer was October 4, 2016, and the Defendants requested an extension of seven days until October 11, 2016, "in order to complete their analysis of Plaintiff's claims and prepare an appropriate response." Defendants also requested "a similar extension of time to respond to Plaintiffs' Requests for Production of Documents," but did not explain why the extension of time was necessary. This request was granted on September 16, 2016.

On October 11, 2016, Defendants Peters and Ware filed a Second Motion for Extension of Time. Defendants requested an additional 30 days, until November 10, 2016, citing the same reasons as they did in the first motion. This request was granted on October 17, 2016.

On November 10, 2016, Defendants Peters and Ware filed a Third Motion for Extension of Time. Defendants requested an additional 11 days, up to and including November 28, 2016, again citing the same reasons.[3] On this same date, the MCSD Defendants filed a motion for summary judgment, and a motion to stay discovery until the Court ruled on their motion for summary judgment.

On November 28, 2016, the KHP Defendants filed this present motion to dismiss. Defendants argue, amongst other things, that the claims against John Doe Nos. 1–7 should be dismissed because Dartez failed to serve John Doe Nos. 1–7 within 90 days, and that the claims are now barred by the statute of limitations. On this same date, Defendants Peters and Ware also filed a motion to stay deadlines pending the Court's ruling on their motion to dismiss.

---

[3] Magistrate Judge Waxse eventually granted Defendants Peters and Ware's extension on November 30, 2016. In doing so, Judge Waxse noted: "Counsel for Defendants entered this case on September 13, 2016; the two other sets of Defendants in this case, who entered the case on September 12, 2016, have already filed their Answers on October 6 and 11th. As such, the Court will not grant another extension. Defendants Peters and Ware shall answer or otherwise plead on or before November 28, 2016."

On December 2, 2016, Defendants Peters and Ware filed a Certificate of Service of Responses and Objections to Plaintiff's Requests for Production of Documents. This was filed four days after the November 28 deadline, and 106 days after Dartez served his request for production. On December 9, 2016, Magistrate Judge Waxse granted Defendants' joint motion to stay the proceedings pending the Court's ruling on the pending dispositive motions.

Then, on March 27, 2017, before the Court had ruled on the dispositive motions, Dartez filed a motion for leave to amend complaint. This Court denied Dartez's motion for leave to amend, and granted the MCSD Defendants' motion for summary judgment on Jun 27, 2017. The Court now turns to the KHP Defendants' motion to dismiss.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss any claim for which the plaintiff has failed to "state a claim upon which relief can be granted."[4] In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[5] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[6] This plausibility standard reflects the Rule 8 requirement that pleadings must provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[7] When considering a Rule 12(b)(6) motion, this Court must accept all of the

---

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[7] *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

factual allegations in the complaint as true, and view them in a light most favorable to the plaintiff.[8]  The Court, however, does not apply the same presumption to conclusory allegations or legal conclusions.[9]

For purposes of this motion to dismiss, the Court construes Dartez's complaint in the light most favorable to Dartez.[10]  Additionally, because Dartez is proceeding pro se, the Court construes his complaint liberally and holds it to a less stringent standard than if it had been drafted by a trained lawyer.[11]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[12]

### III.    Discussion

### A.    Dartez Has Shown Good Cause for His Failure to Timely Effect Service

The KHP Defendants first argue that Dartez had 90 days from the date the Amended Complaint was filed (June 30, 2016) to properly serve John Doe Nos. 1–7.  However, as the KHP Defendants point out, John Doe Nos. 1–7 have never been served with process.  Thus, the KHP Defendants argue that any claims against John Doe Nos. 1–7 should be dismissed for lack of personal jurisdiction, and are subsequently barred by the applicable statute of limitations.

---

[8] *Res. Ctr. For Indep. Living, Inc. v. Ability Res., Inc.*, 534 F. Supp. 2d 1204, 1209 (D. Kan. 2008) (citing *Zinermon v. Burch*, 494 U.S. 113, 118 (1990)).

[9] *Iqbal*, 556 U.S. at 678–79.

[10] *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) (quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

[11] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (internal citations omitted).

[12] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Dartez counters that shortly after he filed the Amended Complaint, he submitted a Request for Production "in an attempt to obtain the contact information (names, etc.) of *all* those involved in the incident, including the 7 John Does listed in the Amended Complaint." However, according to Dartez, "the Defendants, and counsel for the Defendants, knowingly withheld the information from [him], and the Court(s), pertaining to the John Doe Defendants." Thus, he argues, the fact that John Doe Nos. 1–7 have not been served is not due to his negligence. Rather, Dartez contends that this delay is due to the KHP Defendants' efforts to conceal the identities of John Doe Nos. 1–7.

1. *Dartez Has Shown Good Cause*

Fed. R. Civ. P. 4(c) provides that the "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ." Rule 4(m) then provides:

> If a defendant is not served within 90 days after the complaint is filed, the court-on motion or on its own motion after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Under Rule 4(m), the Court's preliminary inquiry is whether the plaintiff has shown good cause for the failure to timely effect service.[13] If the plaintiff shows good cause, then the plaintiff is entitled to a mandatory extension of time.[14] But if the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted.[15] "At

---

[13] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[14] *Id.*

[15] *Id.*; *see also Oklahoma, ex rel. the Board of Regents of the Univ. of Okla.*, 153 F. App'x 505, 507 (10th Cir. 2005) (holding that district court abused its discretion by failing to consider whether permissive extension of time was warranted after concluding that good cause did not exist to grant an extension).

that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service."[16]

Good cause is likely to be found when: (1) the plaintiff's failure to timely effectuate service is the result of the conduct of a third person; (2) "the defendant has evaded service of the process or engaged in misleading conduct;" (3) the plaintiff has diligently tried to effect service or there are understandable mitigating circumstances; or (4) the plaintiff is proceeding pro se or in forma pauperis.[17]  However, the fact that a defendant would not be prejudiced by an extension, by itself, does not equate to good cause.[18]  Similarly, the fact that the statute of limitations has run—effectively barring a plaintiff's claims absent an extension—is also insufficient to demonstrate good cause by itself.[19]

Here, Dartez has shown good cause for his failure to serve John Doe Nos. 1–7 within 90 days as required by Rule 4(m).  First, Dartez's failure to identify or serve John Doe Nos. 1–7 can almost exclusively be attributed to Peters, Ware, and their counsel.  Dartez did not know the name of the officers involved in his arrest.  Thus, he filed a request for production, requesting the names of John Doe Nos. 1–7 just 49 days after filing his Amended Complaint.  Had the KHP

---

[16] *Espinoza*, 52 F.3d at 841.

[17] 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (4th ed. 2017); *see also Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997) (concluding that evasion of service of process was good cause for extension); *Bland v. Kan. City Cmty. Coll.*, 271 F. Supp. 2d 1280, 1291 (D. Kan. 2003) (concluding that pro se plaintiff was entitled to additional time to effect proper service of process upon community college in age discrimination action because plaintiff demonstrated sincere efforts to comply with service requirements).

[18] *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994).

[19] *Id.  But see Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) (concluding that excusable neglect, coupled with the inability to refile the action constitutes good cause to extend the time for service under Rule 4(m)); *Rhodan v. Schofield*, 2007 WL 1810147, at *5 (N.D. Ga. 2007) (holding that "harsh result" of expiration of statute of limitations "is 'good cause' to enlarge the [90-day] period.").

Defendants responded to Dartez's request within 30 days as required by Rule 34,[20] Dartez would theoretically have had 21 days left to serve John Doe Nos. 1–7. Yet Defendants requested *three* extensions of time, without providing a reason why additional time was needed to respond to Dartez's request.[21] From the date Dartez filed his request, until the date Defendants served Dartez with their responses and objections, 106 days had passed, along with the 90-day Rule 4 deadline.[22]

And according to Dartez, "when a response was finally received from them, they denied *any knowledge* of any of the John Does, refused to recognize them as Defendants in this case, provided *no* response or defense for them and then suggested that they do not have any recollection of the persons assigned that day and lack the ability and/or authority to retrieve the information requested."[23] Although Defendants deny withholding information from Dartez, they do not claim that they provided Dartez with the "names and contact information of the KHP tactical team members involved during the attack," as he had requested. Accordingly, Peters'

---

[20] Fed. R. Civ. P. 34(b)(2)(A).

[21] In each of their motions for extension of time, Defendants Peters and Ware requested additional time to answer or otherwise plead to the Amended Complaint, "in order to allow them to complete their analysis of Plaintiff's claims and prepare an appropriate response." However, Defendants Peters and Ware did not explain why additional time was needed to respond to Dartez's discovery request. The motions simply requested "a similar extension of time to respond to Plaintiff's Requests for Production of Documents." Without providing an adequate reason—or any reason at all—Defendants should not have been granted an extension of time to respond to Dartez's request. Unfortunately, those matters were not before this Judge. But in the words of Lady Macbeth, "what's done, is done."

[22] Even after receiving three gratuitous extensions of time, the KHP Defendants still failed to timely respond to the request for production. In their Third Motion for Extension of Time, Defendants Peters and Ware requested "up to and including November 28, 2016 . . . [to] provide responses to Plaintiff's Requests for Production of Documents." But Defendants did not serve their Responses and Objections to Plaintiff's First Requests for Production of Documents upon Dartez until December 2—four days after the November 28 deadline set by Magistrate Judge Waxse.

[23] Despite Defendants' alleged denial of any knowledge of John Doe Nos. 1–7, it is worth noting that counsel for Defendants Peters and Ware raises defenses and arguments in support of John Doe Nos. 1–7 in this motion to dismiss.

and Ware's conduct—which can properly be classified as "evasive" and "misleading"—is primarily to blame for Dartez's failure to timely effectuate service.[24]

Furthermore, the Court concludes that Dartez has diligently tried to effect service and the facts of this case amount to understandable mitigating circumstances. Dartez requested the names of John Doe Nos. 1–7 on August 18, 2016. If the KHP Defendants had timely responded to his request, he would have had three weeks to serve John Doe Nos. 1–7 before reaching the 90-day deadline. The extensions of time that the KHP Defendants received were out of Dartez's control. In fact, because Dartez is a pro se prisoner, the parties did not even confer with him before requesting the extensions. Dartez's efforts to effect service and the mitigating circumstances further support the conclusion that Dartez has shown good cause.

Finally, even though the fact that the statute of limitations has run is, by itself, insufficient to demonstrate good cause, it does support the conclusion when viewed in conjunction with the KHP Defendants' misleading and evasive conduct. In fact, the Advisory Committee Notes to the 1993 Amendments to Rule 4(m) suggest that an extension should be granted (even if there is no good cause shown), if the applicable statute of limitations would bar a refiled action, or the defendant is evading service.[25] Wright and Miller explain:

> There also will be instances in which the defendant either purposely evades service during the Rule 4(m) period or the defendant conceals a defect in process until the statute of limitations period has expired. These types of cases provide strong arguments for granting good-cause extensions of the period for service, as described above. Also, in the event a defendant moves to dismiss under these

---

[24] *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (4th ed. 2017).

[25] Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendments ("Relief may be justified for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.").

circumstances, *the motion should be denied.*  The purpose of Rule 4(m) is to prod the slow-footed plaintiff, not to reward the crafty or evasive defendant.[26]

Such is the case here.  Dartez timely requested that Defendants Peters and Ware provide him with the names and contact information of the KHP Special Response Team members so he could serve them with process.  Instead of timely providing Dartez with that information, the KHP Defendants requested numerous extensions (without conferring with Dartez) to "complete their analysis of Plaintiff's claims and prepare an appropriate response."  And while the KHP Defendants were diligently "analyzing" Dartez's claims, they were struck by good fortune: the 90-day Rule 4 deadline passed.  At that point, the "appropriate response" finally became clear. They could simply argue that Dartez failed to serve John Doe Nos. 1–7 within 90 days, so the Court now lacks personal jurisdiction over them, and the claims should therefore be dismissed. And as an added bonus, because so much time has passed, Dartez would be barred from bringing a subsequent action against John Doe Nos. 1–7.  The KHP Defendants' conduct—which can accurately be described as crafty and evasive—will not be rewarded by this Court.[27]  In fact, the conduct strongly supports the Court's decision to grant Dartez a good-cause extension.

For these reasons, the Court concludes that Dartez has shown good cause for his failure to serve John Doe Nos. 1–7 within 90 days.  Accordingly, Dartez is entitled to a mandatory

---

[26] 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (4th ed. 2017) (emphasis added).

[27] Again, it is unfortunate that—to a limited extent—the Court facilitated Defendants' conduct by granting the motions.  However, as explained in more detail below, the Court relied on Defendants' representations to the Court that such extensions were necessary.  In hindsight, it is not so clear that the extensions were in fact necessary. But this was not apparent at the time.

extension of time to serve John Doe Nos. 1–7 "for an appropriate period," which is explained below.[28]

###### 2.    *KHP Defendants Must Provide the Names and Addresses of John Doe Nos. 1-7*

Of course, an extension of time to serve John Doe Nos. 1–7 is useless to Dartez without knowledge of their identities.  In his request for production, Dartez requested the names and contact information of all those involved in the arrest, including John Doe Nos. 1–7.  But Dartez now asserts that the KHP Defendants have "denied *any knowledge* of any of the John Does, refused to recognize them as Defendants in this case . . . and suggested that they do not have any recollection of the persons assigned that day and lack the ability and/or authority to retrieve the information requested."  The KHP Defendants do not specifically deny Dartez's account.  While the KHP Defendants are adamant that they did not withhold information from Dartez, they do not state that they provided him with the names and addresses he requested.  The KHP Defendants very well could have denied any knowledge of the John Does or suggested that they do not have any recollection of the persons assigned that day.

When a plaintiff is ignorant of defendants' true identities, the claimant is entitled to name a John Doe defendant.  This practice preserves the plaintiff's right to name the defendant official later when his or her identity has been learned.  But the claimant should attempt to learn the Doe defendants' true identities with reasonable diligence.  If an incarcerated pro se plaintiff is unable to ascertain the identities through the discovery process, the Court may order the disclosure of the identity or identities of John Doe(s).[29]

---

[28] *Espinoza*, 52 F.3d at 841; Fed. R. Civ. P. 4(m).

[29] *See, e.g.*, *Maclin v. Paulson*, 627 F.2d 83, 87–88 (7th Cir. 1980) ("In this case, since the pro se plaintiff was denied counsel by the district court, he could hardly be expected to discover the names of the arresting officers through the discovery route.  Therefore, the district judge should have ordered their disclosure . . . ."); *Munz v. Parr*,

Here, Dartez attempted to ascertain the identities of John Doe Nos. 1–7 when he filed his request for production on August 18, 2016. But it does not appear that the KHP Defendants cooperated with that request. Accordingly, the Court orders that Defendants Peters and Ware shall take all reasonable steps to ascertain the full names and service addresses of John Doe Nos. 1–7 allegedly involved in the incident described in the Amended Complaint.

The Court further orders that Defendants Peters and Ware shall submit to the Court and to Dartez the full names and service addresses of John Doe Nos. 1–7 within 30 days from the date of this Order.[30] The Court will not grant an extension of time. Failure to comply will result in a show cause hearing with the Court.

Once the information is provided to the Court and to Dartez, Dartez is ordered to file a motion for leave to amend his Amended Complaint. This motion must seek to add the true identities of John Doe Nos. 1–7 as Defendants in this action. The Court orders Dartez to file this motion within 30 days of receiving the requested names and addresses. Upon resolution of that motion, Dartez will have 45 days to serve those individuals with the summons and complaint.

### 3. Counsel Must Show Cause Why Sanctions Should Not Be Imposed

In hindsight, it appears that the KHP Defendants may not have needed additional time to "analyze" Dartez's claims, but rather were delaying the proceedings until after the 90-day Rule 4 deadline had passed and the statute of limitations had run. As counsel should well know, the law

---

758 F.2d 1254, 1257 (8th Cir. 1985) ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served . . . ."); *Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997) (concluding that district courts should provide incarcerated pro se litigants with reasonable assistance in investigating the identity of "John Doe" officers).

[30] It is within the realm of possibilities that there were not exactly seven KHP Special Response Team members present at the Morris County arrest on November 13, 2014. In that case, the Court instructs Defendants to provide the names and addresses of those individuals reasonably believed to have been present when Dartez was arrested, as well as the names and addresses of individuals reasonably believed to have been employed by the KHP and served on the Special Response Team on or about November 13, 2014.

favors deciding cases on the merits.[31]  That is not to say that counsel is required to resolve all litigation meritoriously; attorneys are certainly encouraged to utilize the technical rules of procedure to their advantage.  But they are not entitled to mislead the Court or seek to delay the proceedings based upon deceitful pretenses.

Fed. R. Civ. P. 11(b) governs representations to the Court.  By presenting to the Court a written motion, an attorney certifies that it is not being presented for any improper purpose, such as to harass or cause unnecessary delay.[32]  The Court relies on these certifications, especially when the opposing party is not consulted beforehand.  Additionally, an attorney is also certifying that the factual contentions made in the motion have evidentiary support.[33]  Rule 11(c)(3) then provides that the Court, on its own initiative, may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).  "A court may 'impose an appropriate sanction' upon the party if the court determines that Rule 11(b) has been violated."[34]

Similarly, Rule 26(g) governs the signing of discovery requests, responses, and objections.  By signing, an attorney or party certifies that their disclosure is complete and correct.[35]  Additionally, the signature also certifies that their response or objection is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

---

[31] *See, e.g., Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 848 (10th Cir. 1997) (recognizing "a policy which favors deciding cases on the merits as opposed to dismissing them because of minor technical defects."); *Gocolay v. N.M. Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992) ("[T]he law favors the resolution of legal claims on the merits.").

[32] Fed. R. Civ. P. 11(b)(1).

[33] Fed. R. Civ. P. 11(b)(3).

[34] *Wasko v. Moore*, 172 F. App'x 791, 793 (10th Cir. 2006) (quoting Fed. R. Civ. P. 11(c)).

[35] Fed. R. Civ. P. 26(g)(1)(A).

increase the cost of litigation."[36]   "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."[37]

This Court has also adopted the Kansas Rules of Professional Conduct.[38]  Rule 3.3 of the Kansas Rules requires that attorneys exhibit candor toward the tribunal at all times.  Specifically, "[a] lawyer shall not knowingly make a false statement of fact" to a tribunal.[39]

Here, the record suggests that counsel for the KHP Defendants may have done just that. On September 13, 2016, counsel claimed that they were "working on their answer or other appropriate response to Plaintiff's Amended Complaint."  However, their work was apparently not finished as they requested a seven-day extension through October 11, 2016, "in order to allow them to complete their analysis of Plaintiff's claims and prepare an appropriate response." Counsel claimed that they were "constrained to make this request out of necessity and not for the purpose of causing any unnecessary delay."  Then, on October 11, counsel requested an additional extension through November 10, again using the same language quoted above.  And finally, on November 10, counsel requested a third extension through November 28.  Once again, counsel stated that the request was being made "in order to allow them to complete their analysis of Plaintiff's claims and prepare an appropriate response," and claimed that they were

---

[36] Fed. R. Civ. P. 26(g)(1)(B)(ii).

[37] Fed. R. Civ. P. 26(g)(3).

[38] D. Kan. Rule 83.6.1(a).

[39] Kan. Rule Prof. Conduct 3.3(a)(1).

"constrained to make this request out of necessity and not for the purpose of causing unnecessary delay."[40]

While requests for extensions of time are not unusual per se, the nature of the case and the timing of the requests for extensions of time appear to be suspect. First, the legal issues in this case do not appear to be particularly complex.[41] This obviously raises the question: why did the KHP Defendants need 151 days to "complete their analysis," so as to answer or otherwise respond to Dartez's Amended Complaint? Second, Dartez requested the names and addresses of John Doe Nos. 1–7 on August 18, 2016, but the KHP Defendants did not respond to Dartez's discovery request until December 2, 2016. Not only did the 90-day Rule 4 deadline pass during this delay, but the two-year statute of limitations also ran on November 14, 2016 (absent tolling or estoppel).[42] Yet Dartez's request for production does not appear to be particularly complex or burdensome. The Court therefore questions whether the KHP Defendants really needed 72 extra days to respond (and why the response was sent four days after the deadline).

An obvious inference is that Defendants Peters and Ware did not *need* 151 days to "analyze" the Amended Complaint before responding, or 107 days to respond to the request for production. But rather, they sought to delay the proceedings until after the statute of limitations

---

[40] In all three of these motions, counsel simply stated: "Defendants also request a similar extension of time to respond to Plaintiff's Requests for Production of Documents."

[41] *See, e.g.*, *Fletcher v. Grynkewicz*, 644 F. App'x 167, 170–71 (3d Cir. 2016) (concluding that excessive force claims were not complex when the issues implicated were the number of times the prisoner was tased, whether he was tased after being handcuffed, and where on his body he was tased); *Avery v. Anderson*, 94 F. App'x 735, 739–40 (10th Cir. 2004) (affirming district court finding that excessive force claim by a prisoner was not complex when issue was whether excessive force was used against prisoner when he was handcuffed, resulting in a lacerated wrist and injured thumb).

[42] *See* Kan. Stat. Ann. § 60-513(a)(4) (providing two-year statute of limitations for actions "for injury to the rights of another . . . ."); *Scott v. Unified Gov't of Wyandotte Cty.*, 2014 WL 4542406, at *1 (D. Kan. 2014) ("In Kansas, a claim brought under Section 1983 is subject to the two-year statute of limitations in Kan. Stat. Ann. § 60-513(a)(4).").

had ran, effectively barring any claims against the individuals behind the John Doe moniker. However, the Court will afford the KHP Defendants' counsel an opportunity to provide their version of events.  Accordingly, the Court orders Mr. Gregory P. Goheen and Mr. Robert L. Turner to show cause why the Motion for Extension of Time (Doc. 17), Second Motion for Extension of Time (Doc. 28), and the Third Motion for Extension of Time (Doc. 35) were not filed for an improper purpose, such as to harass or cause unnecessary delay.[43]  Specifically, the Court orders Mr. Goheen and Mr. Turner, within 14 days after this Order is filed, to:

1.) Provide evidentiary support, pursuant to Fed. R. Civ. P. 11(b)(3) for the contention found in the three motions for extensions of time that the requests were made out of "necessity and not for the purpose of causing any unnecessary delay."

2.) Show cause, pursuant to Fed. R. Civ. P. 11(c)(3), why the three motions for extension of time were not presented for an improper purpose, such as to harass or cause unnecessary delay.

3.) Show cause, pursuant to Fed. R. Civ. P. 26(g), why the responses and objections to Dartez's request for production were not interposed for any improper purpose, such as to harass or cause unnecessary delay.

4.) Address the reasons for responding to Dartez's Request for Production four days after the Court-imposed deadline.

## B.    Failure to Cite to the Proper Constitutional Amendment Does Not Warrant Dismissal

Second, the KHP Defendants argue that Dartez has failed to assert separately viable legal claims in Counts II or IV of his Amended Complaint.  In the Amended Complaint, Dartez brings five claims against various defendants.  Count I alleges police brutality and excessive use of force against the KHP Special Response Team.  Count II alleges Eighth Amendment violations against the KHP Response Team.  Specifically, Dartez claims in Count II that the KHP Special

---

[43] *See* Fed. R. Civ. P. 11(c)(3).

Response Team members severely beat and attacked him while he was not violating any laws or behaving disruptively in any manner.[44]  And Count IV alleges violations of Dartez's Fifth and Fourteenth Amendment rights.  He specified: "By being beaten and being allowed to be beaten by the [KHP Special Response Team] during an arrest for a crime I allegedly committed I was refused my rights of due process of law as well as being innocent until proven guilty . . . ."

The KHP Defendants essentially argue that Counts II and IV should be dismissed because the Fifth, Eighth, and Fourteenth Amendments are not the proper amendments under which to bring a claim of excessive use of force during an arrest.  However, a pro se plaintiff's "mere citation of the wrong constitutional amendment does not preclude his cause of action so long as the facts he alleges state a claim under an obviously applicable constitutional provision."[45]  In other words, the Court will still consider his allegations under the Fourth Amendment framework, even though the Amended Complaint incorrectly alleges violations of the Fifth, Eighth, and Fourteenth Amendments.

The KHP Defendants also seem to argue that these are not separately viable claims.  However, that does not mean the claims must be dismissed—Dartez is entitled to bring claims in the alternative or under different theories.[46]  In Counts II and IV, Dartez provides slightly different supporting facts, and he is entitled to do so.  Accordingly, the Court will not dismiss Counts II and IV of the Amended Complaint.

---

[44] These facts, contained in the "Supporting Facts" section for Count II of the Amended Complaint, are not mentioned anywhere else in his pleading.

[45] *Slayton v. Willingham*, 726 F.2d 631, 634 n.7 (10th Cir. 1984).

[46] Fed. R. Civ. P. 8(d)(2), (3).

**C.      The Eleventh Amendment Only Bars Claims For Monetary Damages Against Defendants in Their Official Capacities**

Third, the KHP Defendants argue that, to the extent Dartez is pursuing § 1983 claims for compensatory and/or punitive damages, Dartez's claims are still barred by the Eleventh Amendment.  Specifically, the KHP Defendants assert that "[s]tate officers sued in their official capacities are immune from suit under the 11th Amendment."  They then argue that "dismissal of any § 1983 claims for damages against the KHP Defendants must be granted due to lack of subject matter jurisdiction."

True, individual defendants sued in their official capacities are immune from suit under the Eleventh Amendment.[47]  However, Defendants' conclusion is misleading.  Dartez is suing Defendants Peters and Ware for both monetary damages and injunctive relief.  Additionally, Dartez is suing each defendant "individually and in his/her official capacity."  "As a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment."[48]

Thus, contrary to Defendants' assertions, it would not be proper to dismiss "all claims against Defendants in their official capacities . . . based on Eleventh Amendment immunity."[49]  The Court may apply the Eleventh Amendment only to Dartez's monetary damages claims

---

[47] *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).

[48] *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001).

[49] *Hornsby v. Jones*, 188 F. App'x 684, 688 (10th Cir. 2006).

against Defendants in their official capacities.[50]  Dartez's equitable claims against Defendants in their official capacities are not subject to the Eleventh Amendment bar.[51]

That said, the KHP Defendants next argue that Dartez's claims—brought against Defendants in both their official and individual capacities—for declaratory or injunctive relief must be dismissed for failure to state a claim.  In his Amended Complaint, Dartez seeks declaratory relief under 28 U.S.C. §§ 2201, 2202, and injunctive relief under 28 U.S.C. § 2283, 2284, and Fed. R. Civ. P. 65.  Specifically, Dartez seeks: (1) a judgment from the Court declaring that the acts and omissions described in his complaint violated his constitutional rights; (2) a preliminary injunction ordering the KHP Tactical Team to complete additional training on how to properly subdue and arrest persons without using excessive force; (3) a preliminary injunction suspending the officers without pay until their training is completed; (4) a preliminary and permanent injunction ordering the KHP to video and audio record all encounters in which the Special Response Team is deployed.

While the KHP Defendants summarily conclude that Dartez's claim for declaratory relief must be dismissed, they failed to offer a supporting argument.  To be sure, claims for declaratory relief are permitted under § 1983.[52]  As the KHP Defendants have not offered a compelling reason—or any reason at all—why the Court should dismiss Dartez's claims for declaratory relief, the Court declines to do so.

---

[50] *Id.*

[51] *Id.*

[52] *See, e.g.*, *Pulliam v. Allen*, 466 U.S. 522, 543–44 (1984) (concluding that a state judge, liable for declaratory relief under § 1983, was also liable for fees under § 1988).

The KHP Defendants do, however, offer an argument in support of dismissal of Dartez's claims for injunctive relief.  They argue that Defendants Peters and Ware, "whether in their official or individual capacities, simply cannot effectuate the injunctive relief sought as they do not as a matter of law have the authority to do so."  Accordingly, Defendants assert that Dartez's claims for injunctive relief must be dismissed for failure to state a claim upon which relief can be granted.

In support of their assertion that they lack the legal authority to effectuate the injunctive relief Dartez is seeking, Defendants Peters and Ware rely solely on two Kansas Statutes.  K.S.A. § 74-2106 states that the Superintendent of the KHP "shall issue orders to the members of the highway patrol . . . specifying duty assignments and limitations upon the duties of the members of the highway patrol."  K.S.A. § 74-2107 states that the Superintendent is "authorized and empowered to make all necessary rules and regulations for the conduct of the members of the state highway patrol . . . ."

These statutes, without anything further, do not compel the conclusion that Defendant Peters, alleged to be the KHP Tactical Team Leader, and Defendant Ware, alleged to be the KHP Tactical Team Lieutenant, lack all legal authority to order members of the KHP Tactical Team to complete additional training or order the team to wear recording equipment.  It may very well be true that Defendants Peters and Ware do not have the legal authority to effectuate the injunctive relief Dartez is seeking.  But the sufficiency of a complaint must generally rest on its contents alone.[53]  And here, the Amended Complaint alleges that Defendants Peters and Ware are legally

---

[53] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Of course there are limited exceptions; the Court may also consult documents attached as exhibits to the complaint; documents central to the claim, and matters of which a court may take judicial notice.  *See id.* (noting that a court may only consider, in ruling on a Rule 12(b)(6) motion, documents incorporated by reference in the complaint, documents referred to in the complaint if the

responsible for the KHP Tactical/Special Response Team.  Accepting this as true, the Amended Complaint states a claim for which relief can be granted.  Defendants' argument may eventually prevail on summary judgment or other stage of the proceedings, but not under Rule 12(b)(6).

In sum, the Eleventh Amendment bars Dartez's claims for monetary damages against Defendants Peters and Ware in their official capacities, and those claims are hereby dismissed. But Dartez's claims for monetary damages against Defendants Peters and Ware in their individual capacity are not barred by the Eleventh Amendment.  And Dartez's claims against Defendants Peters and Ware for declaratory and injunctive relief will not be dismissed at this time either.

## D.    The Amended Complaint Sufficiently Alleges Personal Participation

Next, the KHP Defendants argue that Dartez's claims for damages against Defendants in their individual capacities should be dismissed.  First, Defendants Peters and Ware argue that Dartez has alleged no facts to show that they personally participated in the alleged use of excessive force.  They contend that the Amended Complaint "only presents allegations against [Defendants Peters and Ware] in their supervisory capacities."

Defendants Peters and Ware correctly state that "[s]upervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." However, Defendants are not correct that Dartez only presents allegations against them in their supervisory capacities.

Viewed in the light most favorable to Dartez, the Amended Complaint sufficiently alleges that Defendants Peters and Ware witnessed members of the KHP Special Response Team

documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and matters of which a court may take judicial notice).

use excessive force and failed to intervene.  In Count III,[54] Dartez claims that "all other defendants named" violated his rights by "witnessing" the KHP Special Response Team's use of excessive force, "failing to correct that misconduct, and encouraging the continuation of the misconduct."  Even if an officer did not directly use excessive force or participate in the arrest, an officer "who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."[55]  By alleging that Defendants Peters and Ware witnessed the use of excessive force, but failed to intervene, Dartez has sufficiently stated a claim upon which relief can be granted against Defendants Peters and Ware.

Second, the KHP Defendants argue that the Amended Complaint is "devoid of any factual allegations regarding what, if anything, John Doe Nos. 1–7 are alleged to have done," and the claims against them should be dismissed for failure to state a claim.  In the context of § 1983 claims, liability must be predicated on an individual defendant's personal involvement in the constitutional violation.[56]  It is important that plaintiffs make clear *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations.[57]  "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his

---

[54] In a footnote, the KHP Defendants claim that Count III "is directed at separate Morris County (Riffel, Rodman & Good) and Riley County (French & Johnson) Defendants."  However, in construing the Amended Complaint liberally, "all other defendants named" encompasses every named defendant except for John Doe Nos. 1–7.  Because Defendants Peters and Ware are two of these named defendants, Count III is directed at them as well.

[55] *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (quoting *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (concluding that supervising police officer had a "realistic opportunity" to prevent fellow officers' use of excessive force where the supervisor was present for the arrest, which "last[ed] between three and five minutes," and failed to intervene).

[56] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

[57] *Id.*

-24-

rights 'were violated' will not suffice."[58]  "Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."[59]

But "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."[60]  In the case of unnamed defendants, dismissal is not warranted "so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served."[61]

Here, Dartez has identified John Doe Nos. 1–7 as individuals "employed as KHP tacticle [sic] team member[s]," who were "assigned and on duty at the time the complaint arose."  He then alleges that, at the time the complaint arose, he was "kicked, punched, hit with shield(s), slammed and jumped on excessively.  Then, after [he] was handcuffed [he] was again punched, kicked and severely beaten by the KHP tacticle [sic] team."  Additionally, he alleges that the "members of the KHP tacticle [sic] team severely beat and attacked" him during his arrest." These allegations are specific enough to put the KHP on notice of who might be responsible and how to identify them.[62]  Even though the Amended Complaint did not identify by name any members of the KHP Special Response Team, it did describe with specificity the actions taken by the members of the "KHP tacticle [sic] team"—i.e., John Doe Nos. 1–7.[63]  Accordingly,

---

[58] *Id.* at 1225–26.

[59] *Id.* at 1226.

[60] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

[61] *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996); *see also Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1076 (N.D. Ill. 2014) (deciding not to dismiss complaint naming as defendants "unknown District 21 Employees" because allegations were specific enough to allow specific persons responsible for the alleged wrongdoing to be identified with reasonable certainty and identities could become known through discovery).

[62] *See Boothe*, 66 F. Supp. 3d at 1076.

[63] *See Washington v. City of N.Y.*, 2012 WL 4468163, at *1 (S.D.N.Y. 2012) ("While Plaintiff has not identified by name any police officers, the Complaint describes with specificity the actions taken by the ten police

Dartez has sufficiently alleged John Doe Nos. 1–7's direct, personal involvement in the violation of his constitutional rights.

### E.      The KHP Defendants Are Not Entitled to Qualified Immunity

Finally, the KHP Defendants argue that they are entitled to qualified immunity.  In resolving cases in which the defendants claim qualified immunity, the Court must first consider whether the plaintiff has alleged a deprivation of an actual constitutional right.[64]  If the Court finds a violation, the Court must next determine whether "that right was clearly established at the time of the alleged violation."[65]  A right is "clearly established" if Supreme Court or Tenth Circuit case law exists on point.[66]

The Court may grant a motion to dismiss on the basis of qualified immunity, but "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."[67]  "[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.' "[68]

Here, Dartez has alleged that he was kicked, punched, hit with shields, slammed, and jumped on excessively by John Doe Nos. 1–7.  After he was handcuffed, he alleges that he was again punched, kicked, and severely beaten.  Furthermore, Dartez alleges that he was not

---

officers as part of the alleged incident on June 25, 2010.  Plaintiff has therefore sufficiently pleaded personal involvement on the part of the individual police officers.").

[64] *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[65] *Id.*

[66] *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999).

[67] *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

[68] *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original).

violating any laws or acting disruptively in any way when this force was used against him.  The right to be free from this level of force, while not violating any laws or resisting arrest, was clearly established at the time of Dartez's arrest.[69]

Thus, Dartez adequately alleged that Defendants Peters and Ware violated his clearly established rights by witnessing the use of excessive force and failing to intervene.  Moreover, Dartez adequately alleged that John Doe Nos. 1–7 violated his clearly established rights by personally using excessive force.  Accordingly, the KHP Defendants are not entitled to qualified immunity at this stage.

**F.     Dartez Will Be Appointed Counsel**

Dartez has previously filed two motions for appointment of counsel (Docs. 9 & 33).  Both motions were subsequently denied.  Magistrate Judge Waxse denied his most recent motion without prejudice, noting that Dartez may renew his request for counsel if his claims survive Defendants' pending motions.  Now that Dartez has survived the KHP Defendants' motion to dismiss, the Court will appoint him counsel as he pursues his remaining claims.

**IV.     Conclusion**

Dartez has shown good cause for failing to serve John Doe Nos. 1–7 within 90 days.  Accordingly, the Court orders the KHP Defendants to provide Dartez with the names and addresses with those individuals reasonably believed to be John Doe Nos. 1–7 within 30 days.  Once the information is provided to the Court and to Dartez, Dartez is ordered to file a motion for leave to amend his Amended Complaint.  This motion must seek to add the true identities of

---

[69] *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284–85 (10th Cir. 2007) (noting that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."); *Smith v. Delamaid*, 842 F. Supp. 453, 460 (D. Kan. 1994) ("A reasonable police officer would know that to kick, punch, and throw a restrained, cooperative arrestee constitutes excessive force . . . .").

John Doe Nos. 1–7 as Defendants in this action.  The Court orders Dartez to file this motion within 30 days of receiving the requested names and addresses.  Upon resolution of that motion, Dartez will have 45 days to serve those individuals with the summons and complaint. Additionally, the Court orders Mr. Gregory P. Goheen and Mr. Robert L. Turner to show cause why the Motion for Extension of Time (Doc. 17), Second Motion for Extension of Time (Doc. 28), and the Third Motion for Extension of Time (Doc. 35) were not filed for an improper purpose, such as to harass or cause unnecessary delay.

Because the Eleventh Amendment bars Dartez's claims for monetary damages against Defendants Peters and Ware in their official capacities, those claims are hereby dismissed.  But Dartez's claims for monetary damages against Defendants Peters and Ware in their individual capacity are not barred by the Eleventh Amendment.  And Dartez's claims against Defendants Peters and Ware for declaratory and injunctive relief will not be dismissed at this time either.

Furthermore, the Court will appoint counsel to represent Dartez for the remainder of this case.

**IT IS THEREFORE ORDERED** that Defendants Rick Peters, Robert Ware and John Doe Nos. 1–7's Motion to Dismiss (Doc. 41) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendants Peters and Ware shall take all reasonable steps to ascertain the full names and service addresses of John Doe Nos. 1–7 allegedly involved in the incident described in the Amended Complaint.  The Court further orders that Defendants Peters and Ware shall submit to the Court and to plaintiff the full names and service addresses of John Doe Nos. 1–7 within 30 days from the date of this Order.

**IT IS FURTHER ORDERED** that Gregory P. Goheen and Robert L. Turner show cause why the Motion for Extension of Time (Doc. 17), Second Motion for Extension of Time (Doc. 28), and the Third Motion for Extension of Time (Doc. 35) were not filed for an improper purpose, such as to harass or cause unnecessary delay within 14 days from the date of this Order.

**IT IS FURTHER ORDERED** that counsel be appointed to represent Dartez in this matter.  A separate order will be issued naming the counsel to be appointed.

**IT IS SO ORDERED**.

Dated this 19th day of July, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE