IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SAMUEL LEE DARTEZ, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-3255-EFM-GEB |
| ) | |
| RICK PETERS, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DENY DEFENDANTS PETERS' AND WARE'S MOTIONS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(d) OR, IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME**

COMES NOW the Plaintiff, Samuel Lee Dartez, II, and in further support of his Motion to Deny Defendants Peters' and Ware's Motions for Summary Judgment Pursuant to Rule 56(d) or, in the Alternative, for an Extension of Time (Doc. 129), states as follows:[1]

**1.    Defendants Fail to Recognize the Purpose of Rule 56(d) or Apply Its Standards.**

Defendants Peters and Ware ("Defendants") insist that Plaintiff has not complied with Rule 56(d), because he has not "identified any testimony or evidence" and "proffers no evidence" that would create a genuine issue of material fact that would result in the denial of their motions for

---

[1] Plaintiff previously tendered this reply brief (with the exception of this footnote) to the Court on November 8, 2017, with his sealed Motion for Leave to File Documents Under Seal (Doc. 140). That motion was based on the mistaken belief that counsel for defendants Peters and Ware had designated Exhibits 3, 4, and 5 as confidential subject to the modified protective order in this case. Subsequent conversation between counsel (which was delayed while counsel for defendants Peters and Ware was in a jury trial) has corrected that misunderstanding and clarified that Peters and Ware do not object to the filing of those exhibits (and this reply) in the regular manner. Accordingly, the legend "confidential subject to protective order" has been removed from the face of those exhibits, as attached hereto. To the extent that it may be necessary, Plaintiff respectfully requests leave to file this previously-tendered document at this time, with the addition of this footnote and the modifications to Exhibits 3,4, and 5 described above.

summary judgment. (Doc. 135, hereinafter "Response," pp. 1-3). Defendants seem to ignore the fact that the very purpose of Rule 56(d) and of Plaintiffs' motion, is to provide sufficient opportunity to conduct discovery in order to obtain such testimony or other evidence.

Defendants assert that the Rule 56(d) affidavits submitted by Plaintiff and his counsel are not sufficient. (Response, p.3) But, after citing *Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000), Defendants fail to show that any of the requirements described in that case have not been met. Defendants do not assert that the affidavits do not explain why the facts precluding summary judgment are unavailable. Nor do they assert that the affidavits do not indicate what probable facts can be found through further discovery. Nor do they assert that the affidavits do not describe what steps have been taken to obtain such facts. Nor do they assert that the affidavits have not explained how additional time will allow Plaintiff to controvert facts. Instead, once again wrongly invoking one of the Court's prior rulings, Defendants boldly declare that "there is no discovery that can salvage Plaintiff's claims against Defendants Peters and Ware." (*Id*.).

### 2. Peters and Ware Are Not Entitled to Rely on the Court's Prior Ruling Involving the Morris County Sheriff's Department Defendants.

Defendants Ware and Peters are proceeding from the false premise that they are necessarily entitled to the same result as the Morris County Sheriff's Department ("MCSD") defendants (Rodman, Good, and Riffel). In doing so, Ware and Peters continue to make and rely upon inaccurate statements regarding what the Court actually said and "found" in its prior opinion (Doc. 79) regarding the motion for summary judgment of the MCSD defendants. (Response, pp. 3,4, 8). But repeating those distortions does not make them true.

Defendants Peters and Ware have not refuted the accuracy of Plaintiff's explanation (Doc. 128, pp. 6-7) that the Court granted the MCSD defendants' motion precisely because the Court accepted all of their statements of fact as true only after finding that Mr. Dartez failed to satisfy some of the requirements necessary to obtain relief under Rule 56(d) and failed to controvert any of those statements of fact. Accordingly, the facts deemed admitted there have no precedential effect here, in the context of the present motions. Ware and Peters are not entitled to avail themselves of the benefit of the Court's ruling on the MSCD defendants' motion for summary judgment. Their motions must stand or fall on their own merits.

### 3. Whether Peters and Ware had No Realistic Opportunity to Intervene Remains to Be Seen.

Inviting the Court to prejudge the ultimate issue, Defendants argue that they had no opportunity to intervene to prevent harm to Mr. Dartez. Defendants even go so far as to proclaim that they "were not aware of the alleged use of excessive force" (Response, pp. 4-5) and "did not know what was going on outside of the command center" (p.7) and "had no opportunity whatsoever to intervene" (p.8). But the facts that defendants Peters and Ware have actually cited (pp. 6-7) do not prove that they lacked awareness, knowledge, or opportunity. Instead, all of the facts marshalled by Ware and Peters combined–even if they ultimately prove to be true–would merely establish only that they could not *see* the arrest and beating of Mr. Dartez. But Capt. Peters and Lt. Ware have offered absolutely no evidence that they did not *hear* the beatings, were not aware that the beatings occurred, and did not have an opportunity to protest or to issue orders that the beatings cease. On these critical issues of fact, they still stand utterly mute.

Ironically, Defendants' suggestion that they could not possibly have intervened in any way is undercut by one of the very cases they have cited, *Prister v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000). In *Prister*, the plaintiff was injured by a police dog that was unleashed and allowed to attack him for what one of the defendant officers admitted was "as long as two minutes." 208 F.3d at 925. The jury found that both the officer handling the dog, who released it, and another officer, "who had time to intervene and to order [the dog's handler] to restrain the dog" but failed to do so, were liable. *Id.* The Court of Appeals affirmed, noting that the second officer "had the time and ability to intervene, but he did nothing." *Id.*, at 927. The conclusion reached by the jury and by the appellate court that a law enforcement officer could intervene by simply ordering another officer to cease the infliction of excessive force is a matter of common sense.

Other cases cited by the Defendants speak in terms of whether the officer had a "realistic opportunity" to intervene. *E.g.*, *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 (1st Cir. 1990)("A police officer cannot be held liable for failing to intercede if he has no "realistic opportunity" to prevent an attack."); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Similarly, another court in the Tenth Circuit recently summarized the law regarding failure to intervene, as follows:

> "An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983." *Fogarty* [*v. Gallegos*], 523 F.3d at 1162. This has been clearly established for decades in the Tenth Circuit. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (citing cases from the 1980s to show that the duty to intervene in an excessive force incident had been clearly established at least as of 1992). "In order for liability to attach," however, "there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is [usually] an issue of fact...." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008).

*Livingston v. Wright*, No. 16-CV-2129-WJM-MEH, 2017 WL 3896441, at *6 (D. Colo. Sept. 6, 2017).

Ultimately, the crucial fact issues in this case concerning Peters and Ware are whether they perceived through their senses or had reason to know that Mr. Dartez was being beaten and whether they had a realistic opportunity to intercede. "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes **or has reason to know**: (1) that excessive force is being used, ...." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008)(quoting *Anderson v. Branen*, 17 F.3d 5552, 557 (2d Cir. 1994)(emphasis added)). As indicated in the instant motion and in the affidavits attached thereto, Plaintiff is seeking the opportunity to gather and present evidence that Peters and Ware knew or had reason to know that Mr. Dartez was being beaten and that they had a reasonable opportunity to intervene and bring a halt to the use of excessive force, thereby preventing further injury to Mr. Dartez.

Defendants argue that in order to have a duty to intervene, the officer must be physically present "on scene." (Response, p. 5). First, this argument would effectively replace the "realistic opportunity" standard with one based largely on location. Second, this argument begs the question of what constitutes "on scene." Here, Capt. Peters and Lt. Ware were allegedly in the Command Center, set up near the boat ramp where Mr. Dartez's car was parked.[2] Although their affidavits

---

[2] Although both Ware and Peters have stated in their sworn affidavits that the "command center" was located approximately a quarter mile from Mr. Dartez's vehicle (Doc. 94-1, ¶8; Doc. 97-1, ¶9), it should be noted that the documents recently produced in the initial response to the records subpoena to the Kansas Highway Patrol include a report stating that the "Command Post" was located "100 yards North of Barricaded Suspect." (*See* Exhibit 5 attached hereto, at KHP0773). It therefore appears that Ware and Peters were actually located much closer to Mr. Dartez than they have averred.

are silent on this point, it appears that they were in communication with the SRT members and were in a position to direct the SRT members who carried out the arrest, and to monitor communications by radio and by means of the drop phone that had been placed adjacent to Mr. Dartez's vehicle.[3] Moreover, a person can be present through live audio or video communication. *See, e.g.*, K.S.A. 17-6501(2)(B)(stockholder participating by remote communication may be "deemed present in person"). Again, the key issue is whether the officer had reason to know of the use of excessive force and had a realistic opportunity to intervene. *Vondrak*, *supra*.

In an apparent attempt to divert the Court's attention from the fact that Mr. Dartez's verified Amended Complaint (and his Affidavit attached to the instant motion) clearly alleges that there were two beating incidents–one before he was handcuffed and one afterwards–Defendants quote instead from one passage in Plaintiff's initial Complaint (Doc. 1) to assert that "the incident took 'about 30-45 secs, *if not more*.'" (Response, p. 2)(emphasis added). When they repeated their citation to that passage later in their response (p. 5), Defendants conveniently omitted the qualifying language "if not more." Even more egregiously, Defendants conveniently fail to tell the Court what Mr. Dartez said on page 3 of his original Complaint: "During my November 13th 2014 arrest I was kicked, punched, slammed and beaten by KHP personal [sic]. Once I was handcuffed I was punched, kicked, jumped on and beaten again." (Doc. 1, p. 3). Thus, Mr. Dartez has consistently and repeatedly alleged that he was beaten twice. Defendants have not only failed to address that fact, they have attempted to obscure it. With two beatings, there were two potential opportunities to intervene.

---

[3]The same document referred to in footnote 1 also reflects that the Command Post ("CP"), Tactical, and Perimeter officers were all on the same radio frequency: "SRT1." (*See* Exhibit 5, at KHP0073).

To the extent that time period(s) are of any relevance at this juncture, documents recently produced in the initial response to Plaintiff's records subpoena to the Kansas Highway Patrol include reports from some of the arresting officers stating that the "duration of physical combat" was "2-3 min." (Exhibit 4 attached hereto, at KHP0035) or "approximately 3 minutes" (Exhibit 3 attached hereto, at KHP 0029) and that Mr. Dartez was kept face down for "3 min." (Exhibit 4, at KHP0035) or "[a]pproximately 3 minutes" (Exhibit 3, at KHP0029) after he was restrained.  Plaintiff is still waiting to receive of copies of reports and statements of Peters and Ware in response to the same subpoena, because those items are "Pending."  (See Letter dated October 27, 2017 from Tammie Lord to David G. Seely, copy attached hereto as Exhibit 1, at KHP0001, KHP0002).  Counsel for the Kansas Highway Patrol has informed Plaintiff's counsel that she expects to produce additional documents during the third week of November.  (See email dated October 27, 2017 from Tammie Lord to David G. Seely, copy attached hereto as Exhibit 2).  In order to expedite that production, counsel agreed to defer production of additional records maintained on a different computer system.

    **4.    Defendants' Other Arguments Are Unavailing.**

Defendants also assert (Response, p.5) that the Affidavit of Brenda Jordan (Doc. 120-1) provided Plaintiff with knowledge that Peters and Ware were not among the SRT members directly involved in his arrest.  Although it is not clear how such information is germane to the issue at hand, it should be noted that the information provided to Plaintiff through Ms. Jordan was ambiguous, at best.  She merely noted that she was not provided with the names of the Kansas Highway Patrol Officers who were directly involved in the arrest, who were referred to only as the "SRT Team." According to Ms. Jordan, Ware and Peters were identified, and one of them was listed as the "team

leader," and the other as coordinating the dispatch of the SRT team, although Ware and Peters were not were not listed as arresting officers.

Defendants also assert that because their motions are based in part on qualified immunity, "Plaintiff should not be allowed to engage in discovery absent some showing of a reasonable likelihood that the requested discovery might uncover evidence sufficient to overcome the pending motions for summary judgment." (Response, p. 4). Plaintiff respectfully submits that such a showing has been made.

## Conclusion

Defendants do not dispute that when granting a Rule 56(d) request, "the usual practice is to deny summary judgment without prejudice to the right to reapply at a later date." *Harlan v. United Fire and Casualty Co.*, No. 14-2419-DDC, 2015 WL 4617399, at *4 (D. Kan. July 31, 2015) (quoting 10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2740 (3d ed. 2015)). That is what the Court should do here.

WHEREFORE, for all of the foregoing reasons and for the reasons previously stated, Plaintiff respectfully requests that his Motion to Deny Defendants Peters' and Ware's Motions for Summary Judgment Pursuant to Rule 56(d) Or, in the Alternative, for an Extension of Time be granted.

Respectfully submitted,

FLEESON, GOOING, COULSON & KITCH, L.L.C.


By: /s/ David G. Seely

...

David G. Seely, S.Ct.#11397
Brian E. Vanorsby, S.Ct.#27606
301 N. Main, Suite 1900
Wichita, Kansas 67202
Telephone: (316) 267-7361
Facsimile: (316) 267-1754
E-mail: dseely@fleeson.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on November 27, 2017, the foregoing Reply in Support of Plaintiff's Motion to Deny Defendants Peters' and Ware's Motions for Summary Judgment Pursuant to Rule 56(d) Or, in the Alternative, for an Extension of Time, was electronically filed with the clerk of the court by using the CM/CEF system which will send a notice of electronic filing to all counsel of record.

/s/ David G. Seely
David G. Seely