## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SAMUEL LEE DARTEZ, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-3255-EFM-GEB** |
| | ) | |
| **RICK PETERS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On May 30, 2019, the Court convened an in-person motion hearing to address Plaintiff's Motion for Leave to Amend **(ECF No. 191)** and Plaintiff's Motion to Enforce Subpoena **(ECF No. 255)**. Plaintiff appeared through counsel, David Seely and Brian Vanorsby. Defendants Rick Peters, Robert Ware, Christopher Beas, Daniel W. Diloreto, Brian S. Hedgecock, Christopher P. Mai, Colby J. Markham, David Ruble, Alex R. Taylor and Jason S. Bailey appeared through counsel, Robert Turner, IV. Defendants Robert W. Dierks, Mark French, and Brian Johnson appeared through counsel, David Cooper and Briana Cowell. The Kansas Highway Patrol appeared through counsel, Tammie Lord.

After careful of review of the parties' written briefs and attached exhibits (ECF Nos. 191, 216, 229, 230, 239, 240, 241, 255, 256, and 262), and hearing arguments of counsel, the Court orally **GRANTED** both Motions during the hearing (*see* ECF No. 275). The previously-announced ruling of the Court is now memorialized below.

## I. Background[1]

### A. Nature of the Case

This is a civil rights action where Plaintiff alleges law enforcement brutality. The factual background has been explored in detail in earlier opinions[2] and will not be belabored here. Summarily, Plaintiff Samuel Dartez claims various Defendants, who are members of the Kansas Highway Patrol ("KHP") tactical team and the Riley County Police Department ("RCPD"), either participated in, or were present when, members of the KHP severely beat him during his arrest on November 13, 2014. Following the beating, Plaintiff further claims members of the RCPD failed to obtain medical treatment for him; instead, they drove him straight to the Riley County Jail for booking following his arrest.

### B. Procedural Posture

Plaintiff initially filed this matter on November 12, 2015, acting pro se. He sued the State of Kansas, the KHP, the RCPD, and the Morris County Sheriff's Department, as well as a number of individual and "John Doe" law enforcement officers. Early in the case, the Court ordered Plaintiff to amend his complaint to name proper defendants and set forth sufficient facts. (ECF No. 10, June 2, 2016.) Plaintiff did so, still acting pro se, and removed the State and named agencies from the suit. (ECF No. 11, June 30, 2016.)

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 11), and Second Amended Complaint (ECF No. 150), and/or from the briefing surrounding the pending motions (ECF Nos. 191, 216, 229, 230, 239, 240, 241, 255, 256, and 262). This background information should not be construed as judicial findings or factual determinations.

[2] *See, e.g.*, Memorandum and Orders, ECF Nos. 79, 81, and 149 (all filed by District Judge Eric F. Melgren).

Pursuant to order by District Judge Eric F. Melgren, the Morris County Sheriff's Department and its deputies were later dismissed from the case, and Defendants Peters and Ware were ordered to provide full names and service addresses of John Does 1-7. (Mem. & Order, ECF No. 81, July 19, 2017.) After being appointed counsel (Order, ECF No. 92, Aug. 11, 2017), Plaintiff was permitted to again amend his complaint, and filed his Second Amended Complaint with the assistance of counsel on March 2, 2018. (Order, ECF No. 149; 2nd Am. Compl., ECF No. 150).

After resolution of multiple dispositive motions, an appeal unrelated to the current issues,[3] and a short stay related to one Defendant's military service,[4] the undersigned entered a Scheduling Order (ECF No. 180) on September 27, 2018, initially setting a discovery deadline of June 1, 2019 and a deadline to file any motions to amend the pleadings by November 30, 2018. Plaintiff filed his current Motion to File a Third Amended Complaint on the deadline of November 30, 2018. (Motion, ECF No. 191.) Because a settlement conference was set in late February 2019, the Court postponed consideration of the motion. After the settlement conference was unsuccessful, the parties sought and received modifications to the schedule on April 19, 2019 (ECF No. 264).

---

[3] On July 19, 2017, Judge Melgren ordered Defendants Peters and Ware to submit to the Court and to plaintiff full names and service addresses of previously-named John Doe defendants 1-7 "allegedly involved" in Plaintiff's arrest. (Mem. & Order, ECF No. 81; *see also* Order on Motion to Clarify, ECF No. 87.). Judge Melgren also ordered defense counsel Gregory Goheen and Robert Turner to show cause, within 14 days of this Order, why extensions of time were not filed for an improper purpose. (ECF No. 81.) During a show cause hearing on September 5, 2017, Judge Melgren did not find counsel's written responses identifying the John Doe defendants satisfactory, and imposed sanctions. (ECF Nos. 106, 151.) Counsel appealed the sanctions order (ECF No. 165), and the Tenth Circuit Court of Appeals eventually vacated the sanctions order and remanded the issue for further proceedings. (ECF No. 228.)

[4] *See* Order, ECF No. 169.

Pursuant to those changes, the discovery deadline was reset to September 20, 2019, among other modifications. Following the May 30 hearing and oral ruling on the pending motions, the undersigned held a status conference on July 9, 2019, during which the discovery deadline was extended to December 20, 2019. With this background in mind, the Court turns to Plaintiff's Motion.

## II.    Plaintiff's Motion for Leave to Amend (ECF No. 191)

Although Plaintiff filed a single motion, because there are two pools of defendants (the KHP defendants and the RCPD defendants), two sets of Responses and Replies were filed. As previously noted, the briefing considered by the Court includes ECF Nos. 191, 216, 239, and 241 (Plaintiff's motion and supporting briefs); ECF No. 229 (KHP Defendants Bailey, Beas, DiLoreto, Hedgecock, Mai, Markham, Peters, Ruble, Taylor and Ware's Response in Opposition); and ECF No. 230 (RCPD Defendants Dierks, French, and Johnson's Response in Opposition). Prior to the May 30 hearing, the Court thoroughly reviewed the parties' briefing, and the parties' positions are summarized here.

### A.    Parties' Arguments

#### 1.    Plaintiff's Position

Plaintiff seeks to amend his Complaint for the second time to add six new defendants and achieve three primary goals:

a) Plaintiff asks to "clarify" his claims related to the KHP's failure to train its Special Response Team ("SRT"), and to add the proper defendants related to the claim, including existing defendant KHP Captain Rick Peters, and four proposed new defendants:    Mark Bruce (Superintendent of KHP), Jason Devore (West Region KHP

4

Commander), Robert Keener (KHP Captain overseeing the SRT), and Christopher Bowling (KHP Lieutenant and SRT member).

b) Plaintiff seeks to add a previously-undisclosed KHP SRT member who was involved in his arrest, Trooper Perry Frey.

c) Plaintiff seeks to add a RCPD officer, Detective Joseph Ehrlich, who drove Plaintiff from the scene of his arrest to the Riley County Jail.

Each objective of Plaintiff's motion is addressed in turn.

### a. Failure to Train

In Plaintiff's First Amended Complaint (ECF No. 11) and Second Amended Complaint (ECF No. 150), he does not delineate "failure to train" as a specific separate count or claim. But in both pleadings, he requests as relief an injunction requiring the KHP officers to undergo proper training regarding use of force and to be suspended until they complete such training. (*See* 1st Am. Compl., ECF No. 11 at 5; 2nd Am. Compl., ECF No. 150 at 9.)

Although all parties agree the statute of limitations on Plaintiff's original claims has expired,[5] Plaintiff contends the addition of this request as a formal claim, and the addition of the KHP officers who would be responsible for such training, should relate back to the date of the original Complaint under Fed. R. Civ. P. 15(c)(1)(B). And, because Defendant

---

[5] Plaintiff's arrest occurred on November 13, 2014. Under K.S.A. § 60-513, the limitations period expires after two years. *See Bell v. City of Topeka, KS*, 279 F. App'x 689, 691 (10th Cir. 2008) (noting Kansas's two-year personal-injury statute of limitations under Kan. Stat. Ann. § 60–513(a)(4) applies to a 42 U.S.C. § 1983 claim). The statute of limitations on Plaintiff's claims ran on November 13, 2016, absent any reason for tolling or extending the limitations period. (Mem. & Order, ECF No. 149 at 8.)

Peters has been named in the case since its original filing, Plaintiff argues Peters has been given fair notice of the claims and it arises out of the same conduct, transaction or occurrence so the claim again him should relate back under Rule 15(c)(1)(B).

Finally, Plaintiff contends the addition of the newly-proposed KHP defendants (Bruce, Devore, Keener, and Bowling) should relate back under Rule 15(c)(1)(C), because they were all provided adequate notice and regular updates on the status of the case. Bruce and Bowling received regular updates, according to the KHP's privilege log (ECF No. 216-8, Ex. 8), as early as October 6, 2016. Keener and Devore were deposed in this case (ECF No. 239, Ex. C), and testified they received email updates about the lawsuit. Citing the D. Kan. case of *Coleman v. Apple Eight Hosp. Mgmt., Inc.*,[6] Plaintiff argues there is no evidence he made a deliberate choice or tactical decision to sue Peters and not Bruce, Devore, Keener, and Bowling. Instead, he contends their prior omission from this case was due to a misunderstanding of the KHP's operational structure. (Reply, ECF No. 239 at 23.)

By illustration, Plaintiff sought production of the Kansas Bureau of Investigation's file regarding his arrest, first while acting pro se in November 2015, and—having never received it—later through counsel by subpoena in early 2018. His counsel eventually received a copy of the voluminous KBI file in June 2018. (*See* Pl.'s Mem., ECF No. 216 at 5.) Plaintiff argues it was only through careful review of the massive KBI investigation file by counsel that he was able to determine Bruce, Keener, Devore, and Bowling shared

---

[6] No. 16-1343-JTM, 2017 WL 1836974, at *1 (D. Kan. May 8, 2017) (granting the plaintiff's motion to amend, noting that True North, the proposed added party, should have known that, "but for the plaintiff's mistake or misunderstanding" regarding the proper party who owned and operated the hotel, the action would have also been asserted against it.)

the training and oversight responsibilities for the SRT. Plaintiff contends all four proposed defendants knew or should have known they would have been named, but for Plaintiff's misunderstanding.

Plaintiff also argues Bruce, Bowling, Devore, and Keener received sufficient notice of Plaintiff's action well within the statute of limitations and Fed. R. Civ. P. 4(m) service period. He claims their addition is not "severely prejudicial," because Bruce, Bowling, Devore, and Keener are represented by the same counsel as the other KHP Defendants, who have participated in this matter since the beginning. Discovery is not currently scheduled to close until December 20, 2019, and this case is not yet set for trial. Therefore, Plaintiff believes the additional defendants will not be prejudiced by defending this claim on the merits.

### b.    Addition of KHP Trooper Perry Frey

Plaintiff seeks to add another KHP officer present at the scene of his arrest. Through documents and video interviews obtained from the KBI, Plaintiff discovered Perry Frey participated in his arrest. Plaintiff learned Frey was the "lead shield in the passenger side 'stack' that assaulted [his] vehicle and provided the handcuffs that were used to restrain" him during his arrest. (ECF No. 216 at 11.) Moreover, Trooper Frey "stood mere feet away" during Plaintiff's alleged beating and failed to intervene. (*Id.*)

Plaintiff argues the addition of Perry Frey as Defendant is not futile because it relates back under Rule 15(c)(1)(C), and Defendants offer no support for their one-sentence argument that his addition does not relate back. During his deposition, Frey testified he had notice of the claims and received email updates; therefore, Frey had notice and would

not be prejudiced. Even if Plaintiff's claims against Frey did not relate back, Plaintiff contends the claims are subject to equitable tolling on the same basis on which Judge Melgren permitted the naming of the other KHP "John Doe" defendants. (*See* Mem. & Order, ECF No. 149.) Plaintiff further argues the KHP Defendants should be equitably estopped from relying on the statute of limitations defense, because they had an obligation to identify Frey when directed to do so by Judge Melgren, and misled Plaintiff to believe Frey was not one of the officers present during Plaintiff's arrest. It was only through review of the extensive KBI investigative file that Plaintiff's counsel determined Frey was present. For these reasons, Plaintiff seeks to amend his Complaint to add KHP Trooper Frey.

### c. Addition of RCPD Detective Joseph Ehrlich

Plaintiff asserted claims against RCPD officers Robert Dierks, Brian Johnson, and Mark French for failure to provide him with adequate medical care following his arrest and instead taking him straight to jail. He did not name RCPD Detective Joseph Ehrlich in any prior complaint.

Plaintiff's counsel contends by the time he received discovery documents from the RCPD in September 2017, he was newly-appointed and was focused on Judge Melgren's order related to naming the KHP "John Does," as well as two pending dispositive motions. He argues Ehrlich's omission from the Second Amended Complaint, filed specifically to comply with Judge Melgren's order to name the John Doe KHP officers, was an inadvertent omission. It was not until counsel's review of the KBI file that he realized Ehrlich should have been included.

Plaintiff maintains Rule 15(c)(1)(B) is satisfied because the claim against Ehrlich "arises under" the same transaction or occurrence as the original pleadings. He further claims Rule 15(c)(1)(C) permits the addition, because Ehrlich was made aware of the filing of this lawsuit, and knew or should have known that but for his inadvertent omission, he would have been named in this action along with his fellow RCPD officers who were on scene.

Even if the claim did not relate back under Rule 15(c)(1)(B) and (C), Plaintiff claims the claim is timely under the "unique circumstances" doctrine and equitable tolling. Plaintiff also argues his delay in naming Ehrlich does not equate to "undue delay", for substantially the same reasons as those supporting relation back. He has adequate explanation for the delay, and it was counsel's inadvertence and oversight that led to the delay in attempting to add Ehrlich to the case. Finally, Plaintiff contends Defendants can point to no prejudice by including Ehrlich.

### 2. KHP Defendants' Position

In response to Plaintiff's motion, the KHP defendants focus on the alleged futility of Plaintiff's proposed failure-to-train claim, the related defendants, and Trooper Frey.

### a. Failure-to-Train Claim and Related Defendants

The KHP Defendants argue this is a new claim, with new defendants, which does not relate back and is therefore futile because it is subject to dismissal on the statute of limitations. They contend the training issue was only included as a requested relief and was only directed to the SRT officers on the scene of Plaintiff's arrest. Plaintiff's proposed amendment would bring in administrative officers who were not on the scene, and the KHP

Defendants argue Bruce, Devore, Keener, and Bowling lacked any notice of the proposed claim against them and, essentially, Plaintiff made a deliberate choice—not a mistake—in not suing them.

The KHP Defendants also insist the failure-to-train claim, even if it does relate back, is not sufficiently plead. Defendants maintain the proposed claim is subject to dismissal because it does not include allegations of the specific policy or training which Plaintiff claims to be improper or inadequate. And, they contend the proposed addition of Devore, Keener, Bowling, and Bruce is futile because those defendants would be entitled to qualified immunity.

### b.    Addition of Trooper Perry Frey

The KHP Defendants argue the addition of Frey is futile, because his addition does not relate back to the earlier Complaint. They claim Frey was not one of the "John Doe" Defendants which Judge Melgren ordered them to identify.[7]

---

[7] *See* discussion *supra* note 3. On July 19, 2017, Judge Melgren ordered Defendants Peters and Ware to submit to the Court and to plaintiff full names and service addresses of previously-named John Doe defendants, 1-7 "allegedly involved" in Plaintiff's arrest. (Mem. & Order, ECF No. 81.) In his later order of clarification, he specifies Defendants must identify "all KHP officers who 'responded to the area' and thus were present during" Plaintiff's arrest, "without regard at this time to whether or not defendants allege that some of such officers were not 'personally involved in subduing or arresting Plaintiff.'" (ECF No. 87 at 2.) Prior to the September 5, 2017 hearing, Defendants produced a list of 34 names—rather than the 7-8 anticipated by the Court—and Judge Melgren found this production to be clearly evasive of the Court's order to identify the specific officers present. (ECF No. 106 at 2.) Apparently, some confusion persists between the parties regarding specifically which officers were required to be named. Although Defendants point to the September 5, 2017 hearing transcript which suggests they were ordered to disclose only those officers involved in *actually extracting* Plaintiff from his vehicle (ECF No. 108), Judge Melgren's earlier written order (ECF No. 87) clearly specifies he intended Defendants to identify those officers *present at the arrest*. (emphasis added.)

The KHP Defendants also contend Plaintiff's proposed Third Amended Complaint fails to state a claim against Frey because the face of the pleading does not exhibit any allegations regarding Frey's personal participation in Plaintiff's arrest. (ECF No. 229 at 29). For the most part, the KHP Defendants focus solely on futility, and spend little time discussing prejudice to Frey by his addition to the case.

### 3. RCPD Defendants' Position

The RCPD Defendants contend the statute of limitations prohibits Ehrlich's addition to the case. Plaintiff's counsel in his earlier criminal action sought discovery for that case, and Defendants argue Plaintiff possessed the same discovery and used it to support the First and Second Amended Complaints. Defendants claim that discovery identified Ehrlich and described his involvement. Although Plaintiff had the information, he failed to seek Ehrlich's addition prior to the expiration of the statute of limitations; therefore they contend Plaintiff's failure to name Ehrlich was not a mistake, and because there was no mistake, there can be no relation back. The RCPD Defendants rely on the information available to Plaintiff and his counsel in the underlying criminal case, as well as early discovery in this case.

The RCPD Defendants also argue the unique circumstances doctrine does not apply, because there was no non-party error, and Plaintiff should have known about Ehrlich's involvement at the time of filing his First Amended Complaint. Defendants also contend the circumstances giving rise to the application of equitable tolling to the statute of limitation for plaintiff's Second Amended Complaint are not applicable to his proposed amendment to add Ehrlich. Unlike the KHP defendants, who did not identify the John Doe

officers as ordered, Plaintiff had documents identifying Ehrlich, and his identity was never concealed. Because Plaintiff should have known about Ehrlich, Defendants argue his omission was not inadvertent.

## B.    Legal Standards

A brief review of the legal standards underlying the parties' arguments is necessary in considering Plaintiff's motion.

### 1.    Amendment Generally

The Fed. R. Civ. P. 15 standard for permitting a party to amend his or her complaint is well-established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[8] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[9] In exercising

---

[8] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[9] *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc*., No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[10] The Tenth Circuit acknowledged Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[11] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[12]

## 2. Futility of Amendment

The party opposing amendment bears the burden of establishing its futility.[13] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[14] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[15] Only if the court finds "the proposed claims do not contain enough

---

[10] *Hinkle v. Mid-Continent Cas. Co*., No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[11] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter,* 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

[12] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

[13] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[14] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)); *see also Neonatal Prod. Grp.*, 2015 WL 1957782, at *2 (internal citations omitted).

[15] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[16] should the court find the amendment futile.

### 3. Relation Back

Because Plaintiff seeks to amend his complaint after the statute of limitations has run,[17] the proposed amendment is futile unless it relates back to the original complaint. Under Fed. R. Civ. P. 15(c)(1)(B), an amendment may relate back to the date of the original pleading if certain condition are met. An amendment to a pleading relates back to the date of the original pleading when the following scenarios, applicable to this case, apply:

. . .

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[18]

---

[16] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

[17] *See* discussion *supra* note 5.

[18] *Lopez-Aguirre v. Bd. of Cty. Comm'rs*, No. 12-2752-JWL-KGG, 2013 WL 5467073, at *1–2 (D. Kan. Sept. 30, 2013) (citing Fed. R. Civ. P. 15(c)(1)).

Fed. R. Civ. P. 15(c)(1).  The purpose of the relation back doctrine is to balance the defendants' interest in statute of limitations protections with the federal rules' general preference to resolve disputes on their merits.[19]

Rule 15(c)(1) is intended to give the defendant "fair notice that the litigation is arising out of a specific factual situation."[20]  An amended pleading does not relate back to a previous pleading unless the earlier pleading fairly gave the defendant notice of the later-asserted claim.[21]  "When an amendment is based on different facts, transactions, and occurrences, a claim in an amended pleading will not relate back."[22]

Section 15(c)(1)(B) addresses amendment of a claim or defense.  When deciding whether a proposed amend claim relates back under Fed. R. Civ. P. 15(c)(1)(B), the court gives broad construction to the set of claims that "arise" out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.[23]

Section 15(c)(1)(C) addresses relation back when the amendment changes the party or the naming of the party against whom a claim is asserted.  And, the "arising under" provisions of Rule 15(c)(1)(B) must still be satisfied.

---

[19] *Donahue v. Kansas Bd. of Educ.*, No. 18-2012, 2018 WL 3055841, at *5 (D. Kan. June 20, 2018), *motion to certify appeal denied,* No. 18-2012, 2018 WL 5283877 (D. Kan. Aug. 1, 2018), *reconsideration denied,* No. 18-2012, 2018 WL 5281555 (D. Kan. Oct. 24, 2018), and *aff'd,* No. 18-3130, 2019 WL 2359370 (10th Cir. June 4, 2019) (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010).

[20] *Price*, 2013 WL 3388905, at *4 (citing *Reed v. Entercom Commc'ns Corp.,* No. 04–2603–CM, 2006 WL 1174023, at *1 (D. Kan. Apr.28, 2006)).

[21] *Id*.

[22] *Id*.

[23] *See Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 645 (D. Kan. 2017) ("Much as the Tenth Circuit gave 'broad construction' to the 'arising under' phrase in [*Williams v. Imhoff*, 203 F. 3d 758 (10th Cir. 2000)], this Court is obliged to 'freely give leave [to amend] as justice so requires.'").

The change or addition of a party should be permitted if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[24]  The focus here is on "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of [the] original complaint."[25]  What the plaintiff knows or should have known is only relevant "if it shows "a *deliberate choice* to sue one party instead of another while fully understanding the factual and legal differences between the two parties."[26]

### 4.    Equitable Tolling and Unique Circumstances

The parties discuss both the doctrines of equitable tolling and unique circumstances as alternatives to permitting or denying amendment on the basis of relation back.  Both doctrines were discussed in detail by Judge Melgren in his earlier order allowing Plaintiff to file the Second Amended Complaint.  (Mem. & Order, ECF No. 149).  Because the Court does not rely heavily on either doctrine in its analysis, these doctrines are summarized as follows:

---

[24] *Burns v. Transdigm Grp., Inc.*, No. 13-1371-RDR, 2015 WL 2062925, at *6 (D. Kan. May 4, 2015) (citing Fed. R. Civ. P. 15(c)(1)(C)).
[25] *Krupski*, 560 U.S. at 548 (emphasis added).
[26] *Krupski*, 560 U.S. at 549 (emphasis added).

a. **Equitable tolling**.  Although statutory tolling does not apply in this case,[27] Judge Melgren previously applied equitable tolling to overcome Defendants' futility arguments and permit Plaintiff to file his Second Amended Complaint without running afoul of the statute of limitations. (ECF No. 149 at 15-18.)  "Equitable tolling applies when a person has been pursuing his rights diligently and some "extraordinary circumstance" prevented the timely filing."[28]  Due to the length of time the Court took to screen Plaintiff's pro se Complaint, along with the KHP Defendants' delay in identifying the John Doe Defendants, the Court found it equitable to toll the limitations period.

b. **Unique circumstances**.  "The unique circumstances doctrine considers the non-party error, whether the party's conduct affected the non-party error, and whether the party reasonably relied upon the non-party's action."[29]  In his March 2, 2018 order, Judge Melgren found—due to the length of time it took the Court to screen Plaintiff's initial complaint, then the Court gave Defendants multiple extensions of time to respond to the pleadings and discovery; then stayed proceedings pending resolution of dispositive motions—there were "569 days for which Plaintiff was waiting on a non-party to perform an action in this case and it was not due to Plaintiff's lack of diligence."  (ECF No. 149 at 15.)  Judge Melgren found "under the unique circumstances of this case, the statute of

---

[27] *See* ECF No. 149 at 9 (noting, "In this case, Plaintiff does not attempt to toll the limitations period statutorily because there is no basis to do so.")

[28] ECF No. 149 at 9 (citing *McClain v. Roberts*, 2013 WL 3970215, at *3 (Kan. Ct. App. 2013) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)); *Sellers*, 2015 WL 1262895, at *3, n. 3 (citing *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014)).

[29] *Id*. (citing *Mangus*, 260 P.3d at 1218 (finding that plaintiff's cause of action was not barred by the statute of limitations because the plaintiff's counsel did not make any misrepresentations to the court in asking for an extension of time for service and then relied upon the district court's order extension)).

limitations was tolled and has not yet expired," so Plaintiff could proceed to name the "John Doe" KHP defendants. (*Id.*)

With the arguments of the parties and the above standards in mind, the Court evaluates Plaintiff's motion.

## C.    Discussion

As outlined above, to determine whether amendment is proper, the Court considers the following factors:  timeliness, prejudice to the other party, bad faith, and futility of amendment.[30]  Plaintiff's motion was timely filed.  Despite it being filed more than three years after the filing of the initial Complaint, it was filed on the deadline established in the most recent Scheduling Order.  Therefore, there is no dispute regarding its timeliness, from a deadline perspective.  In fact, the parties present no timeliness arguments regarding undue delay; but rather only timeliness as it relates to the statutes of limitations.  Neither set of defendants claim to suffer any prejudice from amendment, aside from within their relation-back arguments, and no defendants make allegations of bad faith.  Therefore, the Court's analysis is narrowed to the potential futility of all proposed amendments.  The futility of each proposed claim and/or newly-named defendant is addressed in turn.

### 1.    Failure-to-train Claim and Addition of Related Officers

Although Plaintiff did not mention the KHP's failure to train officers in his initial Complaint, he did include it as a relief sought in his First Amended Complaint.  Both pleadings were filed pro se, so the Court provides him some leniency.  After counsel was

---

[30] *See Minter*, 451 F.3d at 1204.

appointed, counsel was directed to amend to identify the John Doe defendants,[31] and—specifically following those instructions—counsel filed the Second Amended Complaint.  These facts weigh in favor of permitting the addition of the failure-to-train claim.

Additionally, upon receiving both the First and Second Amended Complaints, Defendants were certainly aware a potential form of relief would be an injunction requiring the KHP tactical (SRT) team to engage in additional training.  Even with Plaintiff's proposed addition of the failure-to-train claim, Plaintiff's requested forms of relief remain *identical* to his earlier pleadings.

The primary argument against permitting the new claim is its purported futility, based on the expiration of the limitations period and whether the claim relates back.  When reviewing whether a proposed amendment relates back to the original complaint under Rule 15, the Tenth Circuit has found the phrase "arising out of" "must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from.'"[32] In one case cited by the Circuit, the court explained "arising out of" simply "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship."[33]  In a District of Kansas opinion, the court analyzed whether the scope and nature of the case was "radically altered" by the addition of the new claims.[34]

---

[31] *See* discussions *supra* notes 3 and 7.
[32] *Williams v. Imhoff*, 203 F.3d 758, 765 (10th Cir. 2000).
[33] *Id.* (citing *Acceptance Ins. Co. v. Syufy Enterprises,* 69 Cal. App. 4th 321 (1999)). *See also Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 644 (D. Kan. 2017).
[34] *Anderson*, 318 F.R.D. at 64 (citing *Acker v. Burlington N. & Santa Fe R. Co*., 215 F.R.D. 645, 651 (D. Kan. 2003)).

Under the facts presented, the Court finds the failure-to-train claim relates back to Plaintiff's First Amended Complaint, filed prior to expiration of the statute of limitations, under Rule 15(c)(1)(B). The inclusion of the failure-to-train relief in the First Amended (and Second Amended) Complaint implies, by its very nature, if the KHP SRT team needed additional training, they were not *previously* properly trained. Plaintiff's claims, then, are not "radically altered" by the addition of this claim. Rather, this claim is broadly linked to the earlier Amended Complaint.

Regarding the proposed addition of defendants related to the failure-to-train claim, the Court first examines Defendant Peters. Peters has been named in the case since its original filing, and the Court finds he was aware, since the filing of the Amended Complaint, the training of the KHP SRT officers was an issue in the case. In fact, a part of Peters' early motion to dismiss the First Amended Complaint was based, in part, on his inability to effectuate the training piece of Plaintiff's requested relief. (*See* Defs.' Mem., ECF No. 42 at 8.) The Court finds Peters has been given fair notice of the proposed claim. And, finding the claim arises out of the same conduct, transaction or occurrence, the failure-to-train claim against Defendant Peters relates back under Rule 15(c)(1)(B).

Furthermore, the addition of proposed Defendants Bruce, Devore, Keener, and Bowling is proper under Rule 15(c)(1)(C). Both Bowling and Devore were present at the scene of Plaintiff's arrest—Bowling as the tactical commander and Devore as the highest-ranking officer on scene. (ECF Nos. 191-1 and 276 at ¶¶ 13, 15.) Bruce and Bowling received regular updates, according to the KHP's privilege log, as early as October 6, 2016. (ECF No. 216-8, Ex. 8.) Keener and Devore were deposed in this case (ECF No.

239, Ex. C), and testified they received email updates of the lawsuit. The Court finds each had adequate notice.

Moreover, these four parties will not be prejudiced under Rule 15(c)(1)(C)(i) by their addition to the suit. Although the KHP Defendants contend addition of the claim and new defendants will entail additional discovery and potential motion practice, the Court finds this to be practical prejudice, not undue prejudice barring the relation back of the amendment. As argued by counsel at hearing—and borne out by the recent filings in this case—the newly-named defendants share the same counsel as the remainder of the KHP Defendants. At least two of the men have already been deposed, and with a discovery deadline still six months away, there is adequate time for any additional discovery.

Finally, there is no evidence Plaintiff made a deliberate choice or tactical decision to sue Peters and not Bruce, Devore, Keener, and Bowling. Instead, the Court finds their omission from this case was due to Plaintiff's misunderstanding of the KHP's operational structure. As previously discussed, it was only through Plaintiff's review of the KBI investigation file that Plaintiff was able to determine Bruce, Keener, Devore, and Bowling shared the training and oversight responsibilities for the SRT. The focus under Rule 15(b)(1)(C)(ii) is on what the four proposed defendants knew or should have known.[35] Given their prior knowledge and participation in the case, the Court finds they knew or should have known they would have been named, but for Plaintiff's misunderstanding.

---

[35] *Krupski*, 560 U.S. at 548.

Therefore, the Court finds the addition of Bruce, Devor, Kenner and Bowling relates back under Rule 15(c)(1)(C).

Regarding the KHP Defendants' argument the failure-to-hire claim and the specific claims against Bruce, Devore, Keener, and Bowling are insufficiently plead, the Court finds the argument unconvincing. This is not a situation where the Court is forced to examine an altogether novel claim in a recently-filed action, with no additional context with which to view the proposed pleadings. This case is more than three years old, with numerous filings and prior pleadings. In his March 2, 2018 Order, Judge Melgren noted although Plaintiff may not have presented as thorough factual allegations as Defendants would like (in that instance, to support tolling), the "facts are in front of the Court and the Court can determine from the briefing and the previous pleadings and briefing in this case" whether tolling applied. (ECF No. 149 at 18 n. 44.) And, the KHP defendants previously argued the amended complaint failed to state a claim against other defendants on similar bases, but Judge Melgren overruled their argument. (*See* ECF No. 81 at 23-26.) This Court applies similar reasoning here. Assuming the facts alleged in the complaint are true, and taking the facts in the light most favorable to Plaintiff (as the Court would in a 12(b)(6) motion), Plaintiff's request to amend is not denied on the basis of the sufficiency of the allegations.

The KHP Defendants also argue Plaintiff's claims against Bruce, Devore, Keener, and Bowling would ultimately fail *at the summary judgment stage* based upon qualified immunity. (ECF No. 229 at 21, emphasis added.) But this argument is unpersuasive, because Defendants simply apply the wrong standard. The standard for futility of a

proposed amendment is the Fed. R. Civ. P. 12(b)(6) standard for dismissal—whether Plaintiff has stated a plausible claim—not what could happen later in a Rule 56 summary judgment motion. Plaintiff has stated a plausible claim, and the Court is required to view the allegations in the light most favorable to Plaintiff at this stage.

For the reasons stated herein, exercising its discretion, and recognizing Defendants will have an opportunity to challenge the sufficiency of the failure-to-train claim through a later dispositive motion, the Court will not deny Plaintiff's proposed amendment based on futility. Permitting the filing of the proposed amendment "comports with the liberal amendment policy of Fed. R. Civ. P. 15(a)" to address a case on its merits, where Defendants may later challenge the claim and particularly in light of the lack of prejudice to Defendants discussed below.[36]

Although both sides thoroughly address the issue of futility in their briefs, the other factors weighed by the Court were not so thoroughly addressed. As the party opposing the amendment, the KHP Defendants bear the burden to demonstrate undue prejudice within the meaning of Rule 15. Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part

---

[36] *Brez v. Fougera Pharm. Inc*., No. 16-2576-DDC-GEB, 2017 WL 3267610, at *6 (D. Kan. Aug. 1, 2017) (quoting *Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, 12-1008-JTM-GLR, 2012 WL 2872226, at *2 (D. Kan. July 12, 2012)).

of the movant."[37] While any amendment invariably causes some "practical prejudice," undue prejudice means the amendment "would work an injustice to the defendants."[38]

As discussed above regarding the relation back of the amendment, the Court finds the KHP Defendants failed to demonstrate prejudice sufficient to prohibit the proposed amendment. Although this case has been on file for a considerable amount of time, discovery does not close for several months. Much of the discovery appears complete, and the current schedule will permit any additional discovery necessary because of the amendment. Therefore, the Court struggles to discern any true injustice which would occur from adding the failure-to-hire claim and the related parties.

As set forth above, the Court **GRANTS** Plaintiff's motion to amend to add the failure-to-train claim, and the related defendants: current Defendant Rick Peters, and Colonel Mark Bruce, Major Jason Devore, Lieutenant Christopher Bowling, and Captain Robert Keener.

### 2. Addition of KHP Trooper Frey

After analysis of this proposed amendment, the Court finds the addition of KHP Trooper Frey relates back under Rule 15(c)(1)(B) and (C). As discussed previously, the failure-to-train claim arises out of the conduct and occurrence set out in the original pleadings, satisfying Rule 15(c)(1)(B). And, the Court finds Rule 15(c)(1)(C) also satisfied. Although the KHP Defendants emphasize when *Plaintiff* should have known

---

[37] *Carefusion 213*, 2010 WL 4004874, at *4 (citing *U.S. v. Sturdevant*, No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).

[38] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3) (other internal citations omitted).

about Frey's involvement in his arrest, this is the incorrect focus. The Court must analyze when *Frey* "knew or should have known." Rule 15(c)(1)(C) amendments depend on "what the *prospective defendant* knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing [his] original complaint."[39]

Frey testified he received notice from KHP's legal counsel when Plaintiff tried to sue the State of Kansas and the KHP in his initial Complaint, and again was aware when Plaintiff added Peters and Ware to the lawsuit. (ECF No. 239 at 5, Ex. 1, Frey Dep. 164:4-25.) He also testified he knew about fellow members of the KHP SRT who were sued. (*Id.* at 166, 167.) Frey either knew, or should have known, he would have been named to the lawsuit if Plaintiff "hadn't been mistaken about the proper parties to [an] action"[40] making relation back proper under Rule 15(c)(1)(C).

Even if relation back were improper, application of equitable tolling would allow the amendment to overcome the statute of limitations. Frey was one of the KHP officers present at Plaintiff's arrest, and although Defendants argue he was named in their original disclosure, that 34-name disclosure was found to be clearly insufficient and formed the basis of Judge Melgren's orders to counsel to specifically name the officers present. (*See* Order, ECF No. 87; Order, ECF No. 106.) Judge Melgren explicitly ordered Defendants to name "all KHP officers *who 'responded to the area'* and thus were *present during the incident* involving Plaintiff referred to in the Amended Complaint" regardless of whether

---

[39] *Donahue*, 2018 WL 3055841, at *5 (citing *Krupski*, 560 U.S. at 548) (emphasis added).
[40] *Id.*

Defendants claimed the officer(s) were "personally involved in subduing or arresting Plaintiff." (EFM Order, ECF No. 87, August 2, 107, emphasis added.) Because Frey should have been named at that time, this Court could apply the same principle of equitable tolling applied by Judge Melgren in his Memorandum and Order allowing Plaintiff to name the original "John Doe" KHP officers. (ECF No. 149.)

Although the Court tends to agree with the KHP Defendants that Plaintiff's proposed Third Amended Complaint is somewhat thin on supporting facts, as analyzed above, this is not a situation where the Court or parties are examining a new claim in a recently-filed action, with no additional information on the docket with which to view the proposed pleadings. Because the Court has plenty of context in which to ascertain Plaintiff's claims, and is taxed with taking the facts in the light most favorable to Plaintiff[41] (as the Court would in a 12(b)(6) motion), the Court will not deny amendment based on insufficiency of the allegations.

Both sides thoroughly address the issue of futility in their briefs, but the other factors weighed by the Court were, again, not so thoroughly addressed. The KHP Defendants make no arguments regarding any prejudice to Frey from his addition to the case. Frey has been deposed, he is likely to engage the same counsel, and has several months to complete discovery. Given Defendants' complete disregard of this "most important factor,"[42] the

---

[41] *Potts v. Boeing Co.*, 162 F.R.D. 651, 653 (D. Kan. 1995).

[42] *Brez*, 2017 WL 3267610, at *7 (quoting *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.").

Court finds Defendants wholly failed to demonstrate prejudice sufficient to prohibit the proposed amendment.

Finding the Rule 15 factors weigh in favor of amendment, the Court **GRANTS** Plaintiff's request to file his Third Amended Complaint to add Trooper Perry Frey.

### 3. Addition of RCPD Detective Ehrlich

Plaintiff's final proposed amendment is the addition of Detective Joseph Ehrlich as a defendant. Ehrlich actually drove Plaintiff from the scene of his arrest to the Riley County Jail, but had not been previously included in the lawsuit. After analysis of the proposed amendment, the Court finds the addition of Ehrlich relates back under Rule 15(c)(1)(B) and (C). Ehrlich's addition is to the same previously-plead claim of the RCPD officers' deliberate indifference to Plaintiff's medical needs, which satisfies the "arising-under" requirement of Rule 15(c)(1)(B).

The Court also finds Rule 15(c)(1)(C) satisfied. Although the RCPD Defendants emphasize when *Plaintiff* should have known about Ehrlich's involvement, this is the incorrect focus. Rule 15(c)(1)(C) amendments depend on "what the *prospective defendant* knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing [his] original complaint."[43]

It is likely Plaintiff possessed information about Ehrlich *through his criminal proceedings*. But those proceedings occurred in 2015, and with entirely different counsel. The narrative report from Ehrlich was not produced in discovery in this case until

---

[43] *Donahue*, 2018 WL 3055841, at *5 (citing *Krupski*, 560 U.S. at 548) (emphasis added).

September 12, 2017—well after the limitations period expired.[44] The RCPD Defendants focus on this earlier production of information, but they do not even attempt to argue Ehrlich did not receive notice of this lawsuit <u>or</u> he would be prejudiced in defending it.

Ehrlich was the only RCPD officer who was present and failed to take Plaintiff to the hospital who was not named in this lawsuit. Ehrlich was deposed in this action and testified his co-workers Defendants French, Johnson, and Dierks all informed him they had been sued by Plaintiff, and French even told Ehrlich he was "fortunate" he hadn't been sued. (Pl.'s Reply, ECF No. 241, Ex. C, Ehrlich Dep. at 92-93, 99; Ex. D, French Dep. at 143.) Likewise, Defendant Johnson testified that, shortly after he was served with the lawsuit, he talked to Ehrlich and "highlighted the fact that he was not named in the lawsuit" and "shar[ed] with him his fortune of not being named." (Johnson Dep. 157:4-15.[45]) Defendant Dierks also testified he had a conversation with Ehrlich sometime in 2016, and they discussed the lawsuit and how Plaintiff apparently "drop[ped] the ball" and did not include Ehrlich. (Dierks Dep. at 109-110.[46]) Ehrlich had notice of the claim through discussions with his coworkers. Therefore, it is entirely reasonable to believe Ehrlich knew or should have known he was mistakenly omitted from this lawsuit. As recited by the U.S. Supreme Court in *Krupski v. Costa Crociere S.p.A.*, "Though a potential defendant has a

---

[44] *See* RCPD Defs'. Resp., ECF No. 230; ECF No. 230-9 (Supplemental Response to Plaintiff's First Request for Production of Documentation, served September 12, 2017); ECF No. 109 (Notice of Service); and ECF Nos. 230-2, 230-3, and 230-4 (Reports of Johnson, Dierks and Ehrlich, served that date).

[45] Defendant Brian Johnson's March 26, 2019 deposition transcript was produced by Plaintiff's counsel at the May 30, 2019 hearing and is maintained in the Chambers file.

[46] Defendant Robert W. Dierks' April 30, 2019 deposition transcript was produced by Plaintiff's counsel at the May 30, 2019 hearing and is maintained in the Chambers file.

'strong interest in repose,' repose should not be a 'windfall' for a defendant who possesses sufficient notice of impending claims."[47]

In sum, the facts of this case support Plaintiff's argument that Ehrlich's earlier omission was inadvertent and Ehrlich had sufficient notice of the case. Finding the amendment and addition of Ehrlich relates back under Rule 15(c)(1)(B) and (C), the RCPD Defendants' futility arguments are overruled. Aside from futility, the RCPD Defendants fail to demonstrate any other basis to deny the amendment. Ehrlich has been deposed, and discovery does not close for months. No argument was offered to suggest Ehrlich would suffer any prejudice from being added to the case. Therefore, this "most important factor"[48] supports the Court's decision the addition of Ehrlich to the case is proper.

### D.    Conclusion on Amendment

Applying the standards for consideration of amendment under Rule 15, and accepting all Plaintiff's factual allegations as true, the Court cannot deny the amendment based upon Defendants' futility contentions. Additionally, Defendants failed to demonstrate any amount of undue prejudice which may occur as a result of the amendment. Therefore, finding Plaintiff's proposed amendment not clearly futile, and would cause no undue prejudice, the Court prefers this case to proceed on its full merits.[49] In the interests of justice, the Court allows Plaintiff to amend his Complaint.

---

[47] 560 U.S. at 550.
[48] *Brez*, 2017 WL 3267610, at *7 (quoting *Minter*, 451 F.3d at 1207).
[49] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend his Second Amended Complaint (**ECF. 191**) is **GRANTED**. During the Mary 30, 2019 hearing, Plaintiff was ordered to file his Third Amended Complaint on or before **June 10, 2019**, and Plaintiff has done so. (Third Am. Compl., ECF No. 276.) The parties are strongly cautioned future amendments to the pleadings, although not outright prohibited, will be met with considerable scrutiny[50] given the length of litigation and previous opportunities to articulate the parties' claims.

### III.  Plaintiff's Motion to Enforce Subpoena (ECF No. 255)

On April 3, 2019, Plaintiff filed a Motion to Enforce Subpoena ("Motion to Enforce") to compel compliance with a subpoena issued to the Kansas Highway Patrol ("KHP"). The subpoena requests at issue are:

> 13.    All documents relating to the Kansas Allied Agency SWAT Survey regarding the Kansas Highway Patrol and/or Special Response Team that was conducted in 2015.

> 14.    All documents relating to results of the Kansas Allied Agency SWAT Survey regarding the Kansas Highway Patrol and/or Special Response Team that was conducted in 2015.

> 15.    All documents relating to the independent SWAT Team Assessment commissioned by the Kansas Highway Patrol in 2015, including but not limited to the results of such assessment.[51]

---

[50] *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993); *Foman,* 371 U.S. at 182) (noting "failure to cure deficiencies by amendments previously allowed" is one reason the court may use to deny leave to amend).

[51] ECF No. 256, pp. 1-2.

On January 29, 2019, KHP responded to these subpoena requests by asserting they call "for documents protected by the attorney-client privilege."[52] On February 19, 2019, Plaintiff's counsel asked KHP's counsel to explain the factual basis for assertion of the attorney-client privilege and to provide a privilege log.[53] In response, KHP, in a letter dated February 26, 2019, stated the requests call for "documents protected by the attorney-client privilege and attorney work product protection," and provided a privilege log, which in its entirety stated:

> The Kansas Highway Patrol retained attorney, Eugene P. Ramirez, Esq., of Manning & Kass, Ellrod, Ramirez, Trester LLP attorneys at law in 2015 in anticipation of ligation. The "survey" you reference (official name you set forth in your subpoena - Kansas Allied Agency SWAT; survey name unknown to KHP), was issued by Mr. Ramirez as part of his legal services rendered to our agency as KHP's attorney. The raw results of the "survey" you referenced were never given to the KHP but only generally mentioned in Mr. Ramirez's attorney work product provided to the Chief Legal Counsel of the KHP. Such work product is the independent report regarding KHP's SRT team, 98 pages in length, prepared by KHP's retained counsel, Eugene P. Ramirez, Esq., in anticipation of litigation.[54]

Thus, pursuant to the above privilege log, the only responsive document in KHP's possession to the above subpoena requests is the independent report regarding KHP's Special Response Team ("SRT"), which KHP claims is protected by the work-product doctrine and attorney-client privilege. In support of his Motion to Enforce, Plaintiff argues KHP has not met its burden in showing the work-product doctrine and attorney-client privilege apply. KHP, of course, insists both are appropriate.

---

[52] ECF No. 256, Exhibit 3, pp. 3-4.
[53] ECF No. 256, p. 2 and Exhibit 4.
[54] ECF No. 256, Exhibit 5.

To aid it in resolving the Motion to Enforce, the Court requested KHP to submit the independent report to it for an in-camera review. KHP complied, and the Court fully reviewed the report, which is titled Independent Report to the Kansas Highway Patrol Regarding the Kansas Highway Patrol SRT Team ("Independent Report"), before the May 30th hearing. For the reasons stated below, the Court finds the Independent Report is not protected from disclosure by either the attorney-client privilege or work-product doctrine.[55]

## A. Duty to Confer

As a threshold matter, the Court first considers whether the parties have sufficiently conferred regarding Plaintiff's Motion to Enforce, as is required by D. Kan. Rule 37.2.[56] A review of the briefings indicates counsel attempted to confer via correspondence and telephone in an effort to resolve their disputes.[57] However, the Court was unsure if substantive conversations regarding the privilege issues had occurred,[58] and asked counsel to confer again ahead of the May 30th hearing. Counsel did so and reported back they

---

[55] In his Motion to Enforce, Plaintiff also raises an issue regarding KHP's failure to identify or produce email communications relevant to the subpoena requests at issue. (*See* ECF No. 256 at pp. 7-8.) However, the parties informed the Court they would be able to resolve this dispute through the conferral process and without the Court's intervention.

[56] This Local Rule provides the court will not entertain any motion to compel unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party. It requires the parties in good faith to converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so. D. Kan. Rule 37.2

[57] *See* ECF No. 255, p. 2.

[58] *See* ECF No. 262, p. 2 at ¶ 10.

were unable to resolve their dispute.[59]   As such, the Court is satisfied counsel have adequately conferred as required by the above-cited rule.

## B.   Legal Standards

### 1.   Work-Product Doctrine

Work-product protection is governed by Fed. R. Civ. P. 26(b)(3).   To establish work-product protection, a party must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[60]

The work-product doctrine protects from discovery those documents, things and mental impressions of a party or its representative, particularly its attorney, developed in anticipation of litigation or trial.[61]   The doctrine is not intended to protect work prepared in the ordinary course of business or investigative work unless it was done so under the supervision of an attorney in preparation "for the real and imminent threat of litigation or trial."[62]   For the doctrine to apply there must be a real and substantial probability that litigation will occur at the time the documents were created.[63]

---

[59] Counsel did, however, report they were able to resolve an issue regarding identification and production of email communications without court intervention.  *See supra* note 55.

[60] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013) (quoting *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (citing *Zapata v. IBP, Inc*., 175 F.R.D. 574, 576 (D. Kan. 1997)); *see also Mackey v. IBP, Inc*., 167 F.R.D. 186, 200 (D. Kan. 1996); Fed. R. Civ. P.  26(b)(3).

[61] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc*., 247 F.R.D. 656, 657 (D. Kan. 2007).

[62] *Kannaday,* 292 F.R.D. at 648 (citing *U.S. Fire Ins. Co.,* 247 F.R.D. at 657).

[63] *Id.*

There are two components in determining whether documents are prepared "in anticipation of litigation."[64] The first is the causation requirement—the document in question must have been created because of the anticipation of litigation (i.e. to prepare for litigation or for trial).[65] The second component imposes a reasonableness limit on a party's anticipation of litigation—the threat of litigation must be "real" and "imminent."[66] In addition, courts look "to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine."[67]

## 2. Attorney-Client Privilege

Because this litigation arises out of a federal cause of action, federal law governs the application of the attorney-client privilege.[68] Under federal common law, the essential elements of the attorney-client privilege are: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived."[69]

---

[64] *Id.* (quoting *Marten v. Yellow Freight Sys., Inc.*, No. CIV. A. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)).

[65] *Id.*

[66] *Id*.

[67] *Id.*

[68] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).

[69] *Id.*

The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[70] The privilege also protects advice given by the lawyer in the course of representing the client.[71] The privilege protects communications with in-house counsel as well as outside attorneys.[72] However, information is not privileged simply because it comes from an attorney.[73] The mere fact that one is an attorney does not render everything he does for or with the client privileged.[74] Thus, the privilege "is to be extended no more broadly than necessary to effectuate its purpose."[75]

As stated above, not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice.[76] The focal point of the protection afforded by the attorney-client privilege lies with communications between attorneys and their clients.[77] And, although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.[78] There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client privilege to shield the communication

---

[70] *Id.* (quoting *Marten,* 1998 WL 13244, at * 6).

[71] *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).

[72] *Id.*

[73] *Burton v. R.J. Reynolds Tobacco Co*., 170 F.R.D. 481, 485 (D. Kan. 1997).

[74] *Id.*

[75] *In re Universal Service Fund Telephone Billing Practices Litigation*, 232 F.R.D. 669, 674 (D. Kan. 2005) (quoting *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 196 (D. Kan. 1993)).

[76] *Id.* at 674 (quotations and internal citations omitted).

[77] *Id.* at 675 (quotations and internal citations omitted).

[78] *Id.* (quotations and internal citations omitted).

from disclosure.[79]   Also, legal advice must predominate for the communication to be protected.[80]   The privilege does not apply where the legal advice is merely incidental to business advice.[81]

### 3.   Burden to Establish Privileges

KHP, as the party asserting the attorney-client privilege and work-product doctrine, bears the burden of establishing that either or both apply.[82]   To carry that burden, KHP must make a "clear showing" that the asserted privilege applies.[83]   KHP must "'describe in detail' the documents or information to be protected and provide 'precise reasons' for the objection to discovery."[84]   The Federal Rules of Civil Procedure require a fairly detailed and specific showing to withhold discovery on privilege grounds.[85]   Fed. R. Civ. P. 45(e)(2)(A) provides that a person withholding subpoenaed information under a claim that it is privileged must: "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

---

[79] *Id.* (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 328 (D. Kan. 1997)).
[80] *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. at 675.
[81] *Id.*
[82] *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000).
[83] *McCoo*, 192 F.R.D. at 680.
[84] *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D. Kan. 1994)).
[85] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 671.

This detailed and specific showing is typically presented in the form of a privilege log.[86] A privilege log under District of Kansas precedent should include the following:

(1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

(2) The date upon which the document was prepared;

(3) The date of the document (if different from # 2);

(4) The identity of the person(s) who prepared the document;

(5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;

(6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent; a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, that the documents do not contain or incorporate non-privileged underlying facts;

(7) The number of pages of the document;

(8) The party's basis for withholding discovery of the document; and

(9) Any other pertinent information necessary to establish the elements of each asserted privilege.[87]

Further, KHP must "provide sufficient information to enable the Court to determine whether *each element*" of the asserted privilege is satisfied.[88] This burden can be met only

---

[86] *Kannaday*, 292 F.R.D. at 645.
[87] *Id.* (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 673).
[88] *McCoo,* 192 F.R.D. at 680 (emphasis in original) (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory assertions or blanket claims of privilege.[89]

### C.    Discussion

#### 1.  Work-Product Doctrine

Plaintiff argues KHP fails in proving work product applies based on the lack of information provided in the privilege log.  The Court agrees Plaintiff's privilege log is greatly lacking in detail.  There are no dates given regarding when the Report was prepared or received by KHP.  There is no indication of whether the Report was shared with any other person or agency outside of the KHP.  And, there is no explanation for assertion of work product other than a blanket claim the Report was prepared in anticipation of ligation.

KHP's brief in opposition to Plaintiff's Motion to Enforce gives no better details.

KHP only states:

> In May of 2015, after being alerted to the possibility of potential litigation, the Kansas Highway Patrol hired Eugene P. Ramirez, Esq., of Manning & Kass, Ellrod, Ramirez, Trester LLP attorneys.  KHP was seeking legal services from this firm, specifically Mr. Ramirez, who specializes in legal and operational liability issues regarding SWAT operations.  At all times there was an understanding that Mr. Ramirez was acting within his scope as an attorney and KHP was his client.  In the scope of his representation of the KHP, Mr. Ramirez prepared a report which included his mental impressions and his legal advice to his client the KHP.[90]

There are no details regarding any anticipated litigation and when the potential for litigation surfaced compared to when KHP sought out Mr. Ramirez's firm in May of 2015. In other words, there is no way to know whether the threat of litigation was "real" and

---

[89] *Kannaday*, 292 F.R.D. at 645.
[90] ECF No. 262, p. 4.

"imminent" at the time the document was prepared.  When asked about the anticipated litigation at the May 30th hearing, KHP responded a complaint was filed with the agency about an incident involving the SRT and use of excessive force, which incident is the subject matter of the present action.  Per the KHP, concerns regarding this complaint triggered the agency to reach out to Mr. Ramirez.  However, it is unclear to the Court why this information was not provided in KHP's privilege log or opposition brief.  But, more importantly, a review of the Report itself reveals this is simply not the case.  For instance, page 50 the Report states "in the past 15 years, SRT has never had a complaint or a lawsuit from a suspect as a result of use of force."  If Mr. Ramirez was contacted regarding concerns over an incident involving excessive force, surely the Report would address that incident.  But, the Report does not.

Rather, the Report shows KHP commissioned Mr. Ramirez and other outside law enforcement professionals to conduct an independent review of the SRT to ensure compliance with current law enforcement practices and to recommend areas of improvement.  For example, page 6 of the Report states:

> Within the experience of the evaluators, the decision by the KHP to elicit an independent outside assessment of its Special Response Team is almost unprecedented.  The KHP is to be commended for exhibiting exceptional foresight and leadership in choosing to ensure that the policies, procedures, and utilization of the Special Response Team is in keeping with contemporary law enforcement practices. This preemptive action will undoubtedly result in a more efficient process, and in the long run, hopefully reduce potential liability.

And, page 69 of the Report states the "goal of this report was to provide a roadmap to assist a good team into becoming a great team.  The recommendations are based on years of real-

world experience and represent what we think are the best practices in the SWAT Community."

Additionally, the scope of the Report is very broad. The evaluators give recommendations on topics ranging from training to the type of firearms and vehicles the SRT uses to recruitment methods. The Report appears to evaluate/give recommendations on every aspect of the SRT. Thus, it is hard to imagine how soliciting wide-scale recommendations for improvement of the SRT is in anticipation of litigation. It's doubtful to the Court any anticipated litigation would relate to all of the topics covered in the Report. And, KHP did not specify in its privilege log or elsewhere whether only certain portions of the Report should be protected.

For the foregoing reasons, the Court finds KHP has not met is burden in showing the work-product doctrine protects the Report from disclosure.

### 2. Attorney-Client Privilege

Similarly, Plaintiff argues KHP has not met its burden to show the attorney-client privilege is proper. Plaintiff states KHP's mere assertion of attorney-client privilege in the privilege log, without more information, is insufficient. The Court agrees, and also finds that KHP's opposition brief does not provide any better explanation. It states "Mr. Ramirez, as legal advisor to KHP, prepared this report to provide communication to his client, the KHP. The Independent Report includes legal advice to KHP from Mr. Ramirez and was made in confidence while acting as a legal advisor to KHP. All communications

set forth in this report relate to this intended purpose."[91]  There is no indication of the nature of the legal advice sought or given.  A blanket assertion is insufficient.[92]

After reviewing the Report, the Court believes the main purpose of the Report is not to give legal advice.  Rather, the Report is more business-related.  As stated above, the purpose of the Report was to have an independent outside source evaluate KHP's policies, practices and procedures regarding the SRT to see if improvement was needed in any area.  If any legal advice is given in the Report, it is incidental to this business advice, and thus not protected.[93]  However, it is hard to tell what specific portions of the Report might contain legal advice without KHP so designating in its privilege log or in its brief.  The Report is 98 pages long and does not seem to encompass legal advice at all; rather, it includes recommendations for improving the functioning of the SRT.

The Court found one instance in 98 pages that might contain legal advice.  The Report, at page 25, discusses the factors a court would consider when evaluating the reasonableness of a forced entry and recommends wearing an audio recording and preparing more detailed reports to show compliance with the factors.  This might come close to being legal advice, but again, it is incidental to the overall business purpose of the Report.[94]

---

[91] *Id.* at pp. 4-5.
[92] *See Kannaday*, 292 F.R.D. at 645.
[93] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675 ("Legal advice must predominate for the communication to be protected.  The privilege does not apply where the legal advice is merely incidental to business advice.") (internal citations omitted).
[94] *Id.*

Additionally, regarding the survey results specifically, they are only referenced at pages 64 and 65 of the Report. Apparently, three separate surveys were conducted for the Report. But, the only survey results included in the Report were how others would rate the quality of service and professionalism provided by the SRT. The response options were "Excellent, Good, Adequate, Needs Improvement, Unsatisfactory, or Do not know." In this Court's view, these responses are not akin to giving legal advice.

KHP's privilege log also fails to state the Report was prepared by not only the attorney, Mr. Ramirez, but by several law enforcement professionals who appear to be experts in SWAT team operations. The use of third-party experts will not destroy the attorney-client privilege if the third-party experts were retained to facilitate the effective communication of legal advice between the attorney and client. Thus, communications among the attorney, client, and expert are protected by the attorney-client privilege as long as the other elements of the attorney-client privilege are met.[95]

Here, however, KHP has made no showing these SWAT experts were retained to facilitate the communication of legal advice. Rather, a review of the Report shows they were likely retained to provide recommendations on how to improve the functioning of the SRT and to ensure the SRT is in keeping with contemporary law enforcement practices. Therefore, the fact these non-attorney experts helped prepare the Report is also contrary to the notion the Report is protected by the attorney-client privilege. Additionally, the privilege log fails to state if anyone outside of KHP received a copy of the Report. Without

---

[95] *See New Jersey v. Sprint Corp.*, No. 03-2071-JWL, 2006 WL 8440758, at *2 (D. Kan. Dec. 28, 2006).

such information, it is hard to tell whether it is truly confidential, as is required for attorney-client communications.

Finally, KHP likens the Report to an investigation and cites several cases holding that investigative reports are protected under the attorney-client privilege and work-product doctrine. However, these cases all related to an investigation being undertaken in the face of alleged wrong doing and potential litigation. As explained in the section above, this does not appear to be the case here. KHP has not provided an explanation of what the Report is investigating, rather, the Report is an evaluation of SRT operations to make recommendations for improvement and to ensure compliance with current law enforcement practices. Thus, the Court finds KHP has not met its burden to show the attorney-client privilege protects the Report from disclosure.

### D.    Conclusion

KHP fails to meet its burden to show the work-product doctrine and attorney-client privilege protect the Report from disclosure. Additionally, an in-camera review of the Report shows these privileges do not apply as the Report was not prepared in anticipation of litigation or to give legal advice. Rather, it appears KHP commissioned the Report to receive an independent evaluation of SRT operations and recommendations for improvement. Therefore, the Court grants Plaintiff's Motion to Enforce and orders KHP to produce the Report to Plaintiff.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Enforce Subpoena (**ECF No. 255**) is **GRANTED**.

**IT IS SO ORDERED.**


Dated at Wichita, Kansas this 24th day of July, 2019.


                                             s/ Gwynne E. Birzer
                                             GWYNNE E. BIRZER
                                             United States Magistrate Judge