# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SAMUEL LEE DARTEZ, II,

    *Plaintiff,*

vs.

    Case No. 15-3255-EFM

RICK PETERS, et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Before the Court are the parties' motions for summary judgment (Docs. 427, 431, 433, 435, 437, 439, 441, 443, 445, 447, and 450).[1] Plaintiff Samuel Lee Dartez, II, brings this action against 19 Defendants—Richard Peters, Mark French, Brian Johnson, Robert Dierks, Alex Taylor, Jason Bailey, Christopher Beas, Daniel DiLoreto, Christopher Mai, Colby Markham, David Ruble, Brian Hedgecock, Herman Jones, Perry Frey, Christopher Bowling, Robert Keener, Joseph Ehrlich, Jason Devore, and Robert Ware—alleging violations of his civil rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as violations of Kansas law.

---

[1] The Court also considered Dartez's Motion for Leave to File Surreply (Doc. 532), and finding its proposed contents tangential to this Order, denies the motion.

Defendants now move for summary judgment and Dartez moves for partial summary judgment. For the following reasons, the Court denies the motions.

## I. Factual and Procedural Background[2]

On November 13, 2014, members of the Kansas Highway Patrol ("KHP") Special Response Team ("SRT") arrested Dartez on suspicion that he stabbed Stephanie Holden earlier in the day.[3] Dartez alleges that during the arrest members of the SRT brutally beat him, resulting in numerous injuries to his head, face, and neck, including lacerations and a concussion.

### A. Defendants' Positions with KHP, SRT, and RCPD

At the time of Dartez's arrest, Richard Peters was a KHP officer holding the rank of Captain, was a member of the SRT, and served as its uniformed commander.[4] Christopher Bowling was a KHP officer holding the rank of Lieutenant, was a member of the SRT, and served as its Tactical Commander. Colby Markham was a KHP officer holding the rank of Master Trooper, was a member of the SRT, and served as its Team Leader. David Ruble was a KHP officer holding the rank of Technical Trooper, was a member of the SRT, and served as its Assistant Team Leader. He was also a member of the SRT's Emergency Response Team. Jason Bailey, Christopher Beas, Daniel DiLoreto, Brian Hedgecock, Christopher Mai, Perry Frey, and Alex Taylor were KHP officers, all holding the rank of Master Trooper. They were also members of the SRT, serving on its' Assault Team. Robert Ware was a KHP officer holding the rank of Lieutenant, was a member of the SRT, and served as its lead negotiator.

---

[2] In accordance with summary judgment procedures, the Court sets forth the uncontroverted material facts in the light most favorable to the non-moving party as well as allegations of material fact that remain controverted.

[3] The SRT is the tactical response component of the KHP.

[4] Peters retired from the KHP in February 2016.

Jason DeVore was a KHP officer holding the rank of Major and was the highest-ranking officer at the scene of Dartez's arrest. Robert Keener was employed by the KHP as the Captain of the KHP Training Academy. Herman Jones was not employed by the State of Kansas as a member of the KHP on November 13, 2014, but was subsequently named the Superintendent of the KHP. Mark French is a Riley County Police Department ("RCPD") officer holding the rank of Lieutenant. Brian Johnson, Robert Dierks, and Joseph Ehrlich are detectives in the RCPD.

**B.     Dartez's Arrest**

On November 13, 2014, Dartez stabbed Stephanie Holden in Manhattan, Kansas. Later that day, Dartez left Manhattan in his car and drove until he came to the Munkers Creek boat ramp located near Council Grove. While sitting in his car, he attempted to commit suicide by cutting his wrist and suffocating himself. Morris County Undersheriff John Riffel was the first law enforcement officer to locate Dartez, approximately between 12:00 p.m. and 1:00 p.m. Riffel instructed Dartez to exit the vehicle and show his hands, but Dartez did not comply. After further requests proved unfruitful, the Morris County officers requested assistance from the KHP's SRT.

The SRT received the request for assistance and was provided with some information regarding Dartez's prior history. They arrived on the scene around 3:25 p.m. Before attempting to arrest Dartez, the SRT took control of a large area around his vehicle. One hour later, at approximately 4:25 p.m., the SRT deployed a "throw phone" near Dartez's vehicle to establish a line of communication between him and the SRT's negotiators. Ware was the lead negotiator on the scene and was tasked with communicating with Dartez, which he attempted to do while remaining at SRT's command center. Ware tried to establish verbal communication with Dartez via the throw phone but was unable to obtain contact. Dartez alleges that his window

malfunctioned, preventing him from lowering it and speaking through the throw phone. After failing to contact Dartez, the SRT proceeded to approach his vehicle.

Bailey, Beas, DiLoreto, Hedgecock, Mai, Markham, Taylor, and Frey were assigned to the SRT Assault Team tasked with gaining access to Dartez's car, removing him from his car, and apprehending him. The Team first fired canisters of tear gas into Dartez's car, causing him to exit the vehicle. The officers then deployed a K9 unit, which caused Dartez to retreat into his vehicle. After this back and forth, SRT officers approached to physically extricate Dartez from his car. Defendants allege that Dartez persisted in his non-compliance with their orders and locked the car doors and windows. As a result, SRT officers broke the driver-side window and proceeded to pull Dartez from the car. He was eventually handcuffed and forced to the ground.

Dartez alleges that during this process, multiple members of the SRT struck, kicked, and beat him. He alleges that the beating began while he was still seated in the car, continued throughout his removal and restraint, and persisted after he was handcuffed and lying face-down on the ground. The beating included multiple closed-fist strikes and kicks to Dartez's head. In particular, Taylor allegedly struck Dartez's head so hard that he broke his hand. Dartez alleges that throughout the entire beating, he remained passive and nonviolent. Dartez also alleges that he was struck with a ballistic shield. He had no weapons on his person or in his car but was concealing a screwdriver. Defendants allege that Dartez concealed his hands within his pockets after numerous commands to show them, acting as if the screwdriver was a deadly weapon in an attempt to get them to shoot at him, thereby effecting his intended suicide. Defendants further allege that any physical force used against Dartez was in response to his persistent physical aggression and resistance to arrest.

Ware and DeVore did not physically interact with Dartez on November 13, 2014. Further, Peters, Ware, DeVore, and Bowling did not participate in extracting Dartez from his vehicle, and of those four, only Bowling observed Dartez's extraction from the car and subsequent apprehension. Dartez was unable to identify by name or description which officers attacked him, due at least in part to their wearing helmets, gas masks, and other tactical gear. Dartez alleges that he was also unable to identify the officers because he was lying face down on the ground during much of the beating and because his eyes were irritated from the tear gas fired into his car. However, Bailey, Beas, DiLoreto, Hedgecock, Mai, Markham, Ruble, and Taylor admit to physically interacting with Dartez during the arrest. Dartez alleges that, regardless of the specific identities of the officers who beat him, all the named Defendants witnessed the abuse and did not intervene. Having probable cause to arrest him, the SRT took Dartez into custody at approximately 5:28 p.m.

**C.     Dartez's Injuries**

Dartez was examined and bandaged by Morris County Emergency Medical Services ("EMS") personnel, before being transported to the Riley County Jail by RCPD officers. At the scene of the arrest, French and Johnson looked over Dartez, re-bandaged his head, and said that he did not have any life-threatening injuries that required medical attention at a hospital. The Morris County EMS record noted that Dartez had the following injuries: "lacerations to his right eyebrow, the bridge of his nose and left eyebrow" and "abrasions to the top of his head and upper back bilaterally." The report also notes that Morris County EMS personnel "[d]iscussed with [RCPD] officer in regards to patient treatment options" and "advised that [Dartez's] lacerations need additional treatment, that his vital signs were stable." The report concludes that the "[o]fficer

states they will transport him to Manhattan and seek care there. He asked to have the patient's wounds dressed."

Dartez alleges that without his consent, Johnson signed a waiver rejecting further treatment for him from Morris County. At the direct of French, Dierks and Ehrlich transported Dartez directly to the Riley County Jail, without seeking further medical treatment for him. Jail staff then summoned Riley County EMS personnel to tend to Dartez, which they did by examining him and re-bandaging his head. They confirmed that he did not have any life-threatening injuries and then left.

Dartez was not taken to the hospital until the following day, November 14, 2014, at approximately 11:00 a.m. when he was examined at Mercy Regional Medical Center. He received x-rays and a CT scan due to the severity of his head injuries. Dartez's head injuries were sutured, and he was diagnosed with a concussion. He was returned to jail with directions for the jail staff to closely monitor his condition. Dartez alleges that he has permanent scarring and residual back pain as a result of his arrest, beating, and delayed medical treatment.

**D.     Alleged Spoliation/Destruction/Interference with Preservation of Evidence**

Morris County Sherriff's Office Deputy Charles Rodman parked his patrol vehicle in front of Dartez's car before his arrest.[5] Before leaving the area at the direction of the SRT, Rodman activated his vehicle's forward-facing camera to capture the events in and around Dartez's car. Rodman then gave the keys to his patrol vehicle to Peters, who did not return them until after the arrest.

---

[5] Rodman is no longer a Defendant in this case.

The recording made from Rodman's vehicle shows the SRT moving around Dartez's vehicle at approximately 4:03 p.m.  At approximately 4:18 p.m., before the SRT had any contact with Dartez, the recording shuts off.  As a result, there is no video recording of the SRT's assault on Dartez's vehicle, their removal of Dartez from his vehicle, or his alleged beating.  When Rodman re-took possession of his patrol vehicle following Dartez's arrest, he observed that the video recorder's power button had been turned off.  Later, following an investigation, the Kansas Bureau of Investigation ("KBI") recommended charging Peters with a violation of K.S.A. § 21-6002(a)(5) for interfering with the video recorder in Rodman's vehicle.

**E.	Failure to Train and Supervise**

Whether the SRT training—conducted and supervised by multiple Defendants—complied with KHP policy is at issue in this case.  KHP and SRT training differ, given the tactical nature of SRT officers' roles.  While the KHP training program stresses proper, lawful use of force proportionate to a target's response, Dartez alleges that SRT training frequently encourages the excessive use of force disproportionate to the response of the target.  He alleges that the excessive use of force against him stemmed from inadequate and improper training of the SRT Assault Team members by Keener, Bowling, Markham, Devore, and Peters.  Dartez also alleges that SRT officers, including Bailey, Beas, DiLoreto, Frey, Hedgecock, Mai, Markham, Ruble, and Taylor, were trained to use potentially extreme and lethal force in the form of kicks and blows to the head to gain control of a suspect who is not complying with commands.  He further alleges that SRT officers were trained to use force even when the suspect is not resisting arrest.  Defendants contest all of these charges, alleging that the SRT training stresses only lawful use of force and that Defendants' supervision was tailored accordingly.

### F.      Procedural History

Dartez was convicted on February 2, 2016, of attempted first-degree murder and battery for his stabbing of Holden. He was sentenced to 272 months in prison with 36 months of supervised release. He remains incarcerated. Dartez filed this § 1983 action pro se on November 12, 2015, alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendments rights and violations of Kansas law.

Dartez asserts six claims. Count 1 is a state law claim against Bailey, Beas, DiLoreto, Frey, Hedgecock, Mai, Markham, Ruble, and Taylor for police brutality and the use of excessive force. Likewise, Count 2 is a § 1983 claim against Bailey, Beas, DiLoreto, Frey, Hedgecock, Mai, Markham, Ruble, and Taylor for violating Dartez's Fourth Amendment rights by their use of excessive force during his arrest. Count 3 is a § 1983 claim against Bailey, Beas, DiLoreto, Frey, Hedgecock, Mai, Markham, Ruble, Taylor, Bowling, DeVore, Peter, and Ware for failure to intervene in Count 2's Defendants' excessive use of force. Count 4 is a § 1983 claim against Bailey, Beas, DiLoreto, Frey, Hedgecock, Mai, Markham, Ruble, and Taylor for extrajudicial punishment without due process of law in violation of Dartez's Fifth and Fourteenth Amendment rights. Count 5 is a § 1983 claim against French, Johnson, Dierks, and Ehrlich for their failure to provide him adequate medical attention and their deliberate indifference to his medical condition, in violation of his rights under the Fourteenth Amendment. Finally, Count 6 is a § 1983 claim against Peters, Bowling, Markham, DeVore, Keener, and Jones for failure to properly and adequately train and supervise members of the SRT regarding the use of force in violation of Dartez's Fourth Amendment rights.[6]

---

[6] Dartez has sued Jones—the current Superintendent of the KHP—only in his official capacity because Kansas law precludes Dartez from directly suing the KHP and because other Defendants assert that they lack the

Initially able to identify only two officers, Dartez filed a request for Defendants to produce documents, seeking the names and contact information of the KHP officers who arrested him, as well as KHP members present on the scene during the arrest. Peters and Ware—the only named Defendants at the time—filed three motions for extensions of time to file answers to Dartez's Amended Complaint and to respond to his request to produce documents. The magistrate judge granted each motion.

On November 28, 2016, before filing an answer or responding to Dartez's request for production of documents, Peters, Ware, and the seven John Doe defendants moved to dismiss Dartez's claims against them. In part, the motion argued the claims against the John Doe defendants should be dismissed pursuant to Federal Rule of Civil Procedure 4 for failure to timely complete service of process within 120 days of the Amended Complaint and that the statute of limitations precluded refiling of the claims. The Court granted in part and denied in part the KHP defendants' motion to dismiss, concluding Dartez established good cause for not completing service of process on the John Doe defendants due to the failure of Peters and Ware to respond to the request for production of documents.

On July 19, 2017, the Court ordered Peters and Ware to reveal the identities of John Does 1-7 within 30 days and further ordered that counsel should be appointed to represent Dartez. Eight days later—before Dartez's counsel had been appointed—Defendants sent Dartez an offer of judgment under Federal Rule of Civil Procedure 68 on behalf of themselves and the John Doe

---

authority to require any other KHP Defendants to carry out the terms of any injunctive relief potentially issued by the Court. As a result, Dartez's claim against Jones seeks only injunctive relief. Keener was not present during Dartez's arrest and is sued only for his training and supervision prior to that date.

Defendants.[7]  Defendants' offer of judgment ultimately expired on August 9, two days before the Court appointed Dartez's counsel.  However, it was not until September 5 that the John Does' identities were revealed—in open court upon order from the Court.

The trial in this case is currently set to begin on April 13, 2021.  Defendants now move for summary judgment on all of Dartez's claims.  Dartez moves for partial summary judgment on Defendants' anticipated Rule 68 Offer of Judgment defense.

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12]  The

---

[7] Peters and Ware also filed a motion for reconsideration on August 9, 2017, regarding the Court's earlier denial of their motion to dismiss.

[8] Fed. R. Civ. P. 56(a).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[13]

### III.   Analysis

**A.   Defendants' Motions for Summary Judgment**

   *1.   Dartez's Claims*

The Court concludes that the record raises multiple genuine issues of material fact. First, the record contains factual issues related to Dartez's arrest and subsequent medical treatment, including but not limited to: which SRT officers took part in or witnessed the alleged assault; whether any officers were in a position to intervene in the assault, and if so, whether they failed to intervene; how and how much the officers struck Dartez; whether the officers' use of force was responsive to Dartez's resistance; whether Dartez resisted arrest; whether any KHP officer tampered with the video recording device; whether Dartez consented to the waiver of further medical treatment by Morris County EMS personnel; whether Dartez's injuries required hospitalization; and finally, the nature and extent of Dartez's injuries.

Additionally, the record contains factual issues related to the SRT training, practices, and policies, including but not limited to: the nature and extent of the training provided to the SRT officers regarding use of force; the nature, extent, and adequacy of the supervision over the SRT officers; whether the lack of disciplinary action against SRT members for previous forceful encounters encouraged the use of excessive force in future encounters; and whether the SRT has been allowed to develop and perpetuate an environment conducive to violent behavior.

---

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

These issues are essential to Dartez's claim and the record remains unclear such that a reasonable jury could decide the factual disputes in either party's favor. Therefore, Defendants have failed to carry their burden to show the lack of evidence on essential elements of their claims, or Dartez has otherwise carried his burden to show specific facts evincing a genuine issue for trial. As a result, the Court denies summary judgment on Dartez's claims.

### 2. *Qualified Immunity*

Defendants assert qualified immunity as one of their defenses.[14] "Qualified immunity is an affirmative defense that protects government officials from personal liability unless their actions violate clearly established law of which a reasonable person would have known."[15] "Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time."[16] If a factual dispute exists regarding the objective reasonableness of the defendant's actions, summary judgment is not proper.[17]

The Court concludes that summary judgment is not proper on Defendants' affirmative defense of qualified immunity. First, Dartez has met his burdens of identifying both the clearly established law that Defendants allegedly violated and the alleged conduct that violated those laws.

---

[14] Jones does not assert a qualified immunity defense since he is only sued in his official capacity.

[15] *Coen v. Runner*, 854 F.2d 374, 377 (10th Cir. 1988) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[16] *Id.* (citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988)).

[17] *DeVargas v. Mason & Hanger-Silas Co.*, 844 F.2d 714, 719 (10th Cir. 1988) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The constitutional issues and factual allegations in this case can roughly be separated into three groups: (1) Dartez's claims against the SRT officers, (2) his claims against the SRT trainers and supervisors, and (3) his claims against the RCPD officers. The Court will analyze each group accordingly.

Regarding Dartez's claims against the SRT officers, the Fourth Amendment prohibits "unreasonable" seizures, including the use of unreasonable force.[18] "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[19] Furthermore, "where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury."[20] Additionally, "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official."[21] As such, "[a]n officer who fails to intervene to prevent a fellow officer's use of excessive force may be liable under § 1983" if there was "a realistic opportunity to intervene to prevent the harm."[22] Whether an officer could have intervened to prevent "the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude

---

[18] *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

[19] *Id*. at 397.

[20] *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013).

[21] *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994)).

[22] *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

otherwise."[23]  In his claims against the SRT officers, Dartez has identified clearly established Fourth Amendment law they allegedly violated.  He has also identified the alleged conduct that violated the law, namely the officers' use of excessive force during his alleged beating, or their passive indifference and lack of intervention in the face of fellow officers' use of excessive force.  Therefore, under the first prong of the qualified immunity analysis, Dartez has carried his burden relating to his claims against the SRT officers.

Regarding Dartez's claims against the SRT trainers and supervisors, "each Governmental official . . . is only liable for [his] own misconduct."[24]  When claiming individual liability for failure to train or supervise, a plaintiff must show an "affirmative link" between the supervisor and the Fourth Amendment violation by demonstrating three things: (1) personal involvement, (2) causation, and (3) the state of mind required to establish the alleged constitutional deprivation.[25]  For an alleged Fourth Amendment violation, courts apply the same objective reasonableness test for the requisite state of mind that they do to direct perpetrators of the constitutional deprivation.[26]  In his claims against the SRT trainers and supervisors, Dartez has identified this clearly established law that they allegedly violated.  He has also identified the conduct that violated the law, namely that Peters, Bowling, Markham, DeVore, and Keener either directly designed and implemented the SRT training, supervised the training, or supervised the SRT Assault Team in the field.[27]

---

[23] *Vondrak*, 535 F.3d at 1210 (quoting *Anderson*, 17 F.3d at 557).

[24] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  Dartez's Count 6 is against Peters, Bowling, Markham, DeVore, Keener, and Jones.  To the extent that Dartez's claims are also against those Defendants in their official capacities, qualified immunity analysis does not apply.

[25] *Id*. at 767 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

[26] *See Webb v. Thompson*, 643 F. App'x 718, 725 (10th Cir. 2016) (citing *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010).

[27] As previously mentioned, Dartez alleges that the training emphasized the persistent use of excessive, unlawful force.

Therefore, under the first prong of the qualified immunity analysis, Dartez has also carried his burden relating to his claims against the SRT trainers and supervisors.

Regarding Dartez's claims against the RCPD officers, "[f]ailure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs."[28] "[P]retrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates."[29] The resulting due process standard "protects pretrial detainees against deliberate indifference to their serious medical needs."[30]  In his claims against the RCPD officers, Dartez has identified these clearly established laws that they allegedly violated.  He has also identified the alleged conduct that violated those laws, namely that the RCPD officers persistently refused him medical attention and care, even after the express direction of Morris County EMS personnel.  As he did with his other claims, Dartez has likewise carried his burden under the first prong of the qualified immunity analysis relating to his claims against the RCPD officers.

Finally, Defendants have failed to carry their burden to demonstrate that there are no material issues of fact as to whether their conduct was objectively reasonable.  As mentioned above, multiple genuine issues of material fact preclude summary judgment on Dartez's claims.  Those same factual issues underlie Defendants' qualified immunity defense.  For instance, the record contains factual issues related to Dartez's arrest, such as which SRT officers took part in the alleged assault, how and how much the officers struck Dartez, and whether the officers' use of force was responsive to Dartez's resistance.  The record also contains factual issues related to

---

[28] *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).
[29] *Id*.
[30] *Id*.

Dartez's medical treatment by the RCPD officers, such as whether Dartez consented to the waiver of further medical treatment, whether his injuries required hospitalization, or the nature and extent of his injuries. Finally, the record contains factual issues related to the SRT training and supervision, such as the nature and extent of the training provided to the SRT officers regarding use of force; the nature, extent, and adequacy of the supervision over the SRT officers; whether the lack of disciplinary action against SRT members for previous forceful encounters encouraged the use of excessive force in future encounters; and whether the SRT has been allowed to develop and perpetuate an environment conducive to violent behavior. These and other fact issues remain disputed, and as such, Defendants have failed to carry their burden to demonstrate that there are no material issues of fact as to whether their conduct was objectively reasonable. As a result, the Court denies summary judgment on Defendants' affirmative defense of qualified immunity.

**B.     Dartez's Motion for Partial Summary Judgment**

Dartez moves for partial summary judgment on Defendants' anticipated Rule 68 Offer of Judgment defense. Dartez argues that the offer of judgment was invalid because it was made jointly on behalf of individuals who were not yet parties to the action—"John Does 1-7." He alleges that Defendants have made clear to him that if his recovery is less than the amount offered, they intend to use the offer as a defense against his potential claim for attorney's fees and costs. Defendants argue that the issue is not ripe since they have not yet raised the purported defense.

Under Rule 68(a), "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."[31] If the opposing party obtains a judgment that is less favorable than the unaccepted offer, the opposing party "must pay

---

[31] Fed. R. Civ. P. 68(a).

the costs incurred after the offer was made."[32]  The purpose of Rule 68 is "to encourage settlement and avoid litigation."[33]  The language of the rule is mandatory and leaves no discretion to the district court.[34]  Evidence of an offer of judgment is only admissible in a proceeding to determine costs.[35]

The Court concludes that this matter is not ripe for adjudication.  "The ripeness doctrine aims to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[36]  If the parties' "controversy seem[s] to depend" on a "yet-unaccomplished future contingency," then a constitutionally justiciable controversy does not exist.[37]  Here, Defendants have not yet sought relief from attorney's fees and costs under Rule 68. Furthermore, evidence of an offer of judgment is only admissible in a proceeding to determine costs.  Defendants have not—and can not—assert this defense until such a proceeding.  Dartez implicitly acknowledges this fact in his phrasing seeking "judgment as a matter of law on the KHP defendants' *purported* defense based on the offer of judgment."  Defendants may eventually raise that defense in the eventuality of a proceeding to determine costs.  If that contingency occurs, Dartez may reassert his arguments there, seeking to invalidate the offer of judgment.  At this stage of the case, however, the issue is unripe.  The Court therefore denies summary judgment.

---

[32] Fed. R. Civ. P. 68(d).

[33] *Marek v. Chesny*, 473 U.S. 1, 5 (1985).

[34] *Lintz v. Am. Gen. Fin.*, 76 F. Supp. 2d 1200, 1211 (D. Kan. 1999).

[35] Fed. R. Civ. P. 68(b).

[36] *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1249 (10th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977)) (internal quotation marks omitted).

[37] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quotations and citation omitted).

**IT IS THEREFORE ORDERED** that Defendants' Motions for Summary Judgment (Docs. 431, 433, 435, 437, 439, 441, 443, 445, 447, and 450) are **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Samuel Lee Dartez, II's Motion for Partial Summary Judgment (Doc. 427) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Samuel Lee Dartez, II's Motion for Leave to File Surreply (Doc. 532) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 26th day of February, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE