## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SAMUEL LEE DARTEZ II,

*Plaintiff,*

vs.                                                              Case No. 15-3255-EFM

RICK PETERS, *et al.*,

*Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Samuel Dartez's Motion for Attorney's Fees (Doc. 591).

Plaintiff asks the Court to award him $679,470.30 in reasonable attorney's fees, along with

unreimbursed expenses in the amount of $2,052.67, under 42 U.S.C. § 1988.  The Kansas Highway

Patrol Defendants,[1] against whom the award is sought, respond that any award of attorney's fees

against them must be limited pursuant to the Prison Litigation Reform Act ("PLRA").  The Court

finds that the parties, through the accepted Offer of Judgment under Rule 68, have agreed that the

limitations of the PLRA on which Defendants rely are not applicable to Plaintiff's fee request.  As

---

[1] These are Defendants Rick Peters, Robert Ware, Jason Bailey, Christopher Beas, Daniel DiLoreto, Brian Hedgecock, Christopher Mai, Colby Markham, David Ruble, Alex Taylor, Jason Devore, Robert Keener, Christopher Bowling, Perry Frey, and Herman Jones.

explained more fully below, the Court awards Plaintiff $576,242.28 in attorney's fees and $2,052.67 in costs.

## I.      Factual and Procedural Background

This action was commenced by Plaintiff, originally proceeding pro se, on November 12, 2015.  Generally speaking, Plaintiff sought redress for the violation of his rights when, as he was arrested on November 13, 2014, he was allegedly beaten by officers of multiple law enforcement agencies.  The Defendants named were members of three law enforcement agencies—the Morris County Sheriff's Department ("MCSD"), the Riley County Police Department ("RCPD"), and the Kansas Highway Patrol ("KHP").  What follows is a necessarily brief summary of over five years of litigation as it relates to the KHP Defendants.

Within a few months of filing the Complaint, Plaintiff requested the appointment of counsel to help prosecute his case.  The Court denied this earliest attempt without prejudice to refiling.  At that time, the Court ordered him to amend his Complaint to make allegations against specific individuals, and to use "John Doe" if he did not yet know their names.  Plaintiff complied and named eight defendants along with several John Doe defendants, whom he identified as KHP tactical team members.  Plaintiff filed his Amended Complaint on June 30, 2016, and further requested production of the identities of the KHP John Doe Defendants.

Over the next five months, counsel for the KHP Defendants, Gregory Goheen, requested three separate extensions of time to respond to Plaintiff's Amended Complaint and his discovery request regarding the identity of the John Doe Defendants.  When the KHP Defendants finally responded, it was in the form of a motion to dismiss.  Counsel made the (frankly incredible) argument that the John Doe Defendants, whose identities Plaintiff was kept from discovering as a

result of the repeated requests for extensions of time to respond, had not been served in a timely manner and thus the claims against them were now barred by the statute of limitations.

The Court largely denied KHP Defendants' Motion.  In addition, the Court ordered (1) the KHP Defendants to provide Plaintiff with the names and addresses of the John Doe defendants, (2) Plaintiff to file a motion to amend his complaint after receiving the name of the John Doe defendants, (3) counsel for the KHP Defendants to show cause why the repeated extensions of time were not filed for an improper purpose, and (4) counsel be appointed to represent Plaintiff. David Seely of Fleeson, Gooing, Coulson, & Kitch was appointed for that purpose on August 11, 2017.  Mr. Seely is an experienced civil litigator with several decades of experience.  Mr. Seely represents that he treated the appointment as a firm appointment, and asked an associate at Fleeson, Brian Vanorsby, to second chair the case with him. Several other Feeson partners, Lyndon Vix and Ryan Meyer, have also assisted with the case, as have several paralegals.

Discovery in this case was extensive.  Mr. Seely avers that most of the written discovery was directed towards the KHP Defendants, and that of the 42 depositions taken in this case, 37 were taken by Plaintiff's counsel.  Many of these were of the 14 KHP Defendants and associated witnesses.  Some discovery issues were hotly contested by KHP Defendants, which required Plaintiff to file several discovery motions and a non-party subpoena.

Motions practice was similarly involved.  The KHP Defendants filed a total of eleven motions for summary judgment, totaling several hundreds of pages of briefing (not inclusive of attached exhibits), each of which naturally required extensive responsive briefing. The Riley County Defendants, by contrast, filed one motion for summary judgment.  The Court denied all motions for summary judgment, which largely relied on the denial of Defendants' qualified immunity defense.

The KHP Defendants appealed the Court's ruling.  Before briefing was filed, the Tenth Circuit Mediation Officer became involved.  Mr. Seely avers that, prior to Tenth Circuit mediation and even prior to the appeal, Mr. Goheen had suggested that the parties negotiate attorney's fees under 42 U.S.C. § 1988 separately from Plaintiff's claims for damages and non-monetary relief. Mr. Goheen also reportedly informed Mr. Seely that, while the KHP Defendants did not want to pay "six figures" to Plaintiff, they would not have a problem paying Mr. Seely six figures in attorney's fees.[2]  Mr. Seely agreed that fees would be settled separately.  The parties entered the Tenth Circuit mediation with this in mind.

Ultimately, the mediation and settlement discussions bore fruit.  The KHP Defendants made—and Plaintiff accepted—an Offer of Judgment under Federal Rule of Civil Procedure 68. The accepted Offer was for "the total amount of Sixty Thousand Dollars ($60,000.00) plus reasonable attorneys' fees and costs allowed by law, if any, which have been incurred to date in this cause and no other relief."  Plaintiff accepted the Offer of Judgment on September 10, 2021, and the Clerk of the Court entered Judgment pursuant to the accepted Offer several days later (Doc. 571).  The parties further stipulated to the dismissal of the pending appeal.

After Judgment was entered pursuant to the accepted Rule 68 Offer of Judgment, Mr. Seely states that he reached out to Mr. Goheen to discuss attorney's fees.  It was at that time that Mr. Goheen first notified Mr. Seely that he believed the PLRA dictated the amount of fees that could be awarded in the case and that there was essentially nothing to negotiate.  Because of this, Plaintiff and the KHP Defendants have been unable to reach an agreement regarding attorney's fees in this

---

[2] Defendants appear to believe that Plaintiff's disclosure of (and the Court's reference to) these facts is a violation of the Tenth Circuit Rule 33.1(D), which requires that statements made during a Tenth Circuit mediation conference must remain confidential.  However, the above referenced discussions between counsel for both sides took place well prior to the mediation conference, and are thus not encompassed by the rule.

case.  Plaintiff asks the Court to award him attorney's fees in the amount of $679,470.30.  The

KHP Defendants respond that such any award must be limited to the amount of $90,000—$15,000

of which must be paid out of Plaintiff's Judgment—under the relevant provisions of the PLRA.

## II.      Legal Standard

42 U.S.C. § 1988 provides that, in an action brought under § 1983, "the court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee

as part of the costs."  A "prevailing party" is one who has "succeeded on any significant issue in

litigation which achieved some of the benefit the parties sought in bringing suit."[3]  "The fact that

[a party] prevailed through a settlement rather than through litigation does not weaken her claim

to fees."[4]  Defendants do not dispute that Plaintiff is the "prevailing party."

The PLRA applies "[i]n any action brought by a prisoner who is confined to any jail, prison,

or other correctional facility, in which attorney's fees are authorized under section 1988 of this

title."[5]  When the PLRA applies, attorney's fees will not be awarded, except to the extent that (1)

"the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights"

and (2) either "the amount of the fee is proportionally related to the court ordered relief for the

violation" or "the fee was directly and reasonably incurred in enforcing the relief ordered for the

violation."[6]

The PLRA further provides that:

> Whenever a monetary judgment is awarded in an action described in paragraph (1),
> a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the

---

[3] *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal alteration and quotations omitted).

[4] *Maher v. Gagne*, 448 U.S. 122, 129 (1980).

[5] 42 U.S.C. § 1997e(d)(1).

[6] *Id*. § 1997e(d)(1)(A)-(B).

amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.[7]

The Tenth Circuit has recognized that, though the latter sentence of that section may suffer from inartful drafting, "appellate courts have consistently interpreted the statute to limit a defendant's liability for attorney fees to 150% of the money judgment."[8]  The fee applicant bears the burden of establishing entitlement to an award.[9]

### III.    Analysis

### A.    Applicability of the PLRA

Before proceeding to the thrust of the analysis under § 1997e(d)(2), the subsection on which both parties focus the vast majority of their attention, Plaintiff and Defendants both make cursory arguments under subsection § 1997e(d)(1).  First, Plaintiff argues that the PLRA should not apply to his claims because they arose prior to his incarceration.  Plaintiff recognizes Tenth Circuit precedent is directly against him on this issue,[10] and notes that he merely hopes to preserve the issue for appeal.  This issue is, of course, preserved for appeal.  But the Court is bound to follow Tenth Circuit precedent and conclude that the PLRA provisions on attorney's fees apply to Plaintiff's claims arising prior to his incarceration.

Second, Defendant argues that Plaintiff has proved no "actual violation" of his rights, and thus no fee award is permitted under the PLRA.  Defendant, however, presents this argument only

---

[7] *Id.* § 1997e(d)(2).

[8] *Robbins v. Chronister*, 435 F.3d 1238, 1240 (10th Cir. 2006).

[9] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[10] *Robbins*, 435 F.3d at 1244 ("Given these circumstances, there is nothing absurd about applying the restriction on attorney-fee awards to prisoner civil-rights claims arising before incarceration as well as to such claims arising during incarceration.").

in passing, and in such a perfunctory, lackadaisical fashion that the Court is not inclined to consider it at this juncture.[11]

Moving to the substance of § 1997e(d)(2), this subsection generally provides for two limitations for fee awards when the PLRA applies: (1) "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant" and (2) "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant."[12] Defendant relies on this subsection to argue that, because the Judgment in favor of Plaintiff was $60,000, any fee award must be limited to $90,000, $15,000 of which must come from Plaintiff's monetary judgment. Plaintiff responds that the accepted Rule 68 Offer of Judgment did not provide for such limitations, and that any ambiguity must be construed against the Defendants.

"The language of an offer of judgment is construed according to ordinary contract principles."[13] Contracts with unambiguous language are "enforced according to the plain, general, and common meaning in order to ensure the intentions of the parties are enforced."[14] The lack of ambiguity is especially important in the context of Rule 68.[15] This is because "an ambiguous offer puts the plaintiff in a very difficult situation and would allow the offering defendant to exploit the

---

[11] *See Harter v. United States*, 344 F. Supp. 3d 1269, 1285 n.82 (D. Kan. 2018) ("[T]he Court is not inclined to speculate upon nor address arguments raised in a perfunctory manner.") (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)).

[12] 42 U.S.C. § 1997e(d)(2).

[13] *Roska v. Sneddon*, 366 F. App'x 930, 938 (10th Cir. 2010); *see also Person v. NCO Fin. Sys., Inc.*, 2011 WL 3654452, at *1 (D. Kan. 2011) ("A court is to enforce a Rule 68 agreement guided by common principles of contract law.").

[14] *Person*, 2011 WL 3654452, at *1.

[15] *See Plan Pros, Inc. v. Dultmeier Homes Co.*, 2021 WL 2142653, at *2 (D. Kan. 2021) ("The Supreme Court's interpretation plainly emphasizes the importance of the Rule 68 offer using clear terms in addressing the matter of costs.") (citing *Marek v. Chesny*, 473 U.S. 1, 6 (1985)),

ambiguity in a way that has the flavor of 'heads I win, tails you lose.' "[16]  Thus, "[w]hether the ambiguity is accidental or strategic, Rule 68 must be interpreted to prevent such strategic use of ambiguity by construing an ambiguous offer against the offering defendant's interests."[17] Particularly, with respect to attorney's fees, "any waiver or limitation of attorney's fees in [Rule 68] settlements must be clear and unambiguous.[18]  Extrinsic evidence of the parties' intent may be referred to when the offer itself is ambiguous.[19]

No amount of the fee award must come from Plaintiff's monetary judgment.  Though PLRA provides for such fee-shifting in a typical case, this is an arrangement the parties are free to alter by contract.[20]  And in the case of judgment by an accepted Rule 68 offer that provides for a monetary judgment "plus" reasonable attorney's fees, "every indication is that the Offer anticipated attorneys' fees being paid in addition to the stated sum."[21]  The Court must apply the unambiguous language of the accepted Offer in this case, which provides for a $60,000 monetary judgment "plus reasonable attorney's fees and costs allowed by law," to conclude that the parties did not intend for the reverse-fee shifting provision to apply in this case.  And even if the Court were to conclude, as Defendants urge, that the language "allowed by law" constituted some veiled reference to the limitations of the PLRA, the Court would be required to construe this ambiguity

---

[16] *Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 693–94 (7th Cir. 2013).

[17] *Id.* at 694.

[18] *Erdman v. Cochise Cnty., Ariz.*, 926 F.2d 877, 880 (9th Cir. 1991) (citation omitted).

[19] *Stonebrae L.P. v. Toll Bros.*, 521 F. App'x 592, 594 (9th Cir. 2013); *see also Steele v. KMG Enters., Inc.*, 2014 WL 51261, at *3 n.3 (D. Kan. 2014) ("It is unclear whether courts may consider extrinsic evidence to resolve ambiguities in a Rule 68 offer. Although the Tenth Circuit has no published case directly on point, it appears that the Tenth Circuit would consider extrinsic evidence to resolve purported ambiguities.") (citing *Medina v. Hous. Auth. of San Miguel Cnty.*, 974 F.2d 1345 (Table) (10th Cir.1992)).

[20] *See Carbonell v. Acrish*, 154 F. Supp. 2d 552, 568 n.16 (S.D.N.Y. 2001).

[21] *Berrian v. City of New York*, 2014 WL 6611356, at *6 (S.D.N.Y. 2014), *report and recommendation adopted in part*, 2014 WL 6604641 (S.D.N.Y. 2014).

against the interests of the Defendants as the drafters of the Offer.  Therefore, no part of Plaintiff's monetary judgment will be used to satisfy the attorney's fee award in this case.

More difficult is the question of the cap on total fees generally applicable in PLRA cases. As noted above, the PLRA provides that "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant."[22]  The Tenth Circuit has remarked that "[t]he statutory language may be inartful, but appellate courts have consistently interpreted the statute to limit a defendant's liability for attorney fees to 150% of the money judgment."[23]

The Court concludes that this fee cap, like the reverse fee-shifting provision, can be altered by the parties by contract, including a Rule 68 Offer of Judgment.  If a defendant explicitly makes a Rule 68 Offer on the premise that attorney's fees will not be capped under the PLRA and Plaintiff accepts, foundational principles of contract law would counsel in favor respecting the parties' agreement, including defendant's waiver of the fee cap.  But even in the case of an offer whereby, strategically or no, the defendant induces the plaintiff's acceptance of the offer based in part on the ambiguity as to attorney's fees, the principles underlying Rule 68 suggest that the defendant should be made to bear the cost of this ambiguity.

This is exactly the situation before the Court.  The Offer in this case was for $60,000 "plus reasonable attorneys' fees and costs allowed by law."  Defendants again suggest that the "allowed by law" language tells the Court all it needs to know.  Clearly, they say, this language provides for the application of the fee limiting provisions of the PLRA.  As Defendants note, this is fairly

---

[22] 42 U.S.C. § 1997e(d)(2).

[23] *Robbins*, 435 F.3d at 1240.

standard language for an Offer of Judgment, including in cases not confined by the PLRA.  Further, under the grammatical last antecedent rule, a limiting clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows"[24]—here, "costs."  It is therefore far from clear that the "allowed by law" language references the PLRA.

This ambiguity, the Court believes, is right where counsel for the KHP Defendants prefers to operate.  Mr. Goheen has a long history in this case of weaponizing ambiguity to try and "pull one over" on his opposing counsel and the bench.  He employed a tactic early in the case whereby he sought repeated extensions of time of respond, leaving ambiguous why multiple extensions were necessary, and then turned around and moved to dismiss based on the lapse of the statute of limitations *created by* his repeated extensions.  He has done so again now.  Mr. Goheen represented to Mr. Seeley that, while his clients would not be interested in paying Plaintiff a "six figure" judgment, they would be willing to pay Mr. Seely "six figures" in attorney's fees.  He later requested that the parties approach the settlement of money damages and attorney's fees separately, implicitly suggesting that there would be something to discuss regarding attorney's fees.  Only once the Offer of Judgment was accepted did Mr. Goheen finally step out from behind his veil of vagaries and equivocation.  He informed Mr. Seely that there was essentially nothing to discuss because attorney's fees were capped by the PLRA.

The principles underlying Rule 68 seek to protect against exactly this type of behavior.  Mr. Goheen intentionally left ambiguous whether the Offer of Judgment contemplated the application of the PLRA's cap on attorney's fees.  Thus, the Offer must be construed against

---

[24] *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).

Defendant's interests.[25]  The Court concludes that the accepted Offer under Rule 68 constitutes the agreement of the parties that no fee cap under the PLRA applies in this case.

Defendants' only response, if it can indeed be called that as it is largely limited to footnotes, appears to be that Supreme Court precedent under *Murphy v. Smith*,[26] and Tenth Circuit precedent under *Robbins v. Chronister*,[27] foreclose the result the Court has reached.  Those cases, Defendants' say, set out that the district court does not have the discretion to ignore the PLRA's limitation on attorney's fees awardable in cases such as this one.  But the Court is not ignoring the PLRA.  Rather, the Court is applying the parties' agreement as memorialized by the accepted Rule 68 Offer of Judgment, considered in light of the ambiguity manufactured by defense counsel and extrinsic evidence of the parties' intentions.  Neither *Murphy* nor *Robbins* involved an agreement of the parties that resulted in a monetary judgment; in both of those cases, the monetary judgment was awarded after a full trial.[28]  Because neither of those cases considered the effect of an agreement between the parties regarding the applicability of the PLRA, neither controls the decision here.  Accordingly, the Court concludes that, per the accepted Offer of Judgment, neither the reverse fee-shifting provision nor the fee cap of the PLRA apply to limit the award of attorney's fees in this case.

## B.    Reasonable Attorney's Fees

The starting point in determining the amount of a reasonable fee is a deceptively simple mathematical equation: the number of hours reasonably expended on the litigation multiplied by a

---

[25] *Sanchez,* 709 F.3d at 693–94.

[26] 38 S. Ct. 784, 787 (2018).

[27] 435 F.3d 1238 (2006).

[28] *See Robbins*, 435 F.3d at 1239; *Murphy*, 138 S. Ct. at 786.

reasonable hourly rate.[29]   This amount is known as the "lodestar amount" as it is the "guiding light" in appropriate fee-shifting cases.[30]   There is a strong presumption that the lodestar amount represents a reasonable fee.[31]   After the Court determines the lodestar amount, it must consider whether an adjustment to this amount, either upward or downward, is appropriate to arrive at a reasonable fee.[32]   In doing so, the Court considers several factors:

> (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill required to perform the legal services properly; (4) preclusion of other employment by the attorneys because they accept engagement in the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.[33]

Although the court may consider each factor, it need not consider those factors "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[34]   This is because the lodestar amount should be the primary consideration when determining fee award.[35]

## 1.     Hourly Rate

The Court begins by determining the appropriate hourly rate for the several attorneys and paralegals who worked on Plaintiff's case.  This hourly rate is constrained by the PLRA.  Plaintiff believes that the above analysis suggests that the parties agreed to inapplicability of the *entire*

---

[29] *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010) (citation omitted).

[30] *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (citation omitted).

[31] *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992) (*quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)).

[32] *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted).

[33] *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1060 (D. Kan. 2021) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

[34] *Id.* (citation and internal quotation marks omitted).

[35] *Id.* (citation and internal quotation marks omitted).

PLRA, but the Court does not find this to be the case. Rather, the language of the Offer of Judgment, as construed against the Defendants, shows that the parties specifically agreed to waive the application of the reverse fee shifting provision and the fee cap. But there is no indication the parties agreed to waive the application of any other PLRA provisions.

The PLRA provides that "[n]o award of attorney's fees in an action [brought by a prisoner in which attorney's fees are authorized under section 1988] shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."[36] Though this litigation has gone on for many years now, and the applicable rates have changed several times, the Court finds that Plaintiff is entitled to the rates currently in effect.[37] The current rate for appointed counsel in non-capital cases in the Tenth Circuit is $158.00 per hour.[38] The maximum rate under the PLRA must then be set at $237 per hour (158.00 X 1.5 = 237.00).

Defendants concede that the maximum rate is appropriate for the work done by Mr. Seely, Mr. Meyer, and Mr. Vix, all partners at Fleeson. Nor do Defendants dispute the rates set out for the paralegals Ms. Clark ($95 per hour) and Ms. Arida ($80 per hour). Defendants do dispute that Mr. Vanorsby should should receive the maximum PLRA rate, as his involvement with the case

---

[36] 42 U.S.C. § 1997e(d)(3).

[37] *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) ("The hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed. The lawyers seeking fees usually will not have been paid for their services until the court makes its allowance. We think that awarding compensation at current rates will roughly approximate periodic compensation adjusted for inflation and interest and will obviate the necessity of guessing when periodic billings would have been made and paid in an analogous private practice situation."), *disapproved of on other grounds by Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711.

[38] https://www.ca10.uscourts.gov/cja/news/rate-increases-criminal-justice-act-effective-1122.

began within a year of his bar passage.  The Court agrees with Defendants that $200 per hour is an appropriate figure given the market rate in Wichita for newly admitted associate attorneys.

    *2.*    *Reasonable Hours*

    Plaintiff claims the following hours were reasonably expended in prosecuting Plaintiff's case over the last four-plus years:

| Attorney/Paralegal | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Mr. Seely | 1292.1 hours | $237/hr | $306,227.70 |
| Mr. Vanorsby | 1528.0 hours | $200/hr | $305,600.00 |
| Mr. Vix | 23.6 hours | $237/hr | $5,593.20 |
| Mr. Meyer | 7.4 hours | $237/hr | $1,753.80 |
| Ms. Clark | 185.5 hours | $95/hr | $17,622.50 |
| Ms. Arida | 43.4 hours | $80/hr | $3,472.00 |
| | | **Total:** | **$640,269.20** |

    Plaintiff provides detailed time sheets to support each of these figures.  Defendants have taken the liberty of marking up these time sheets with multi-colored highlighters to note various entries that they believe are *per se* unreasonable.  Instead of attempting to form a coherent argument about these entries, Defendants are content to let their highlighting do the talking.[39]  Before addressing these categories, the Court feels compelled to note Defendants frankly astonishing statement that this was a "relatively straightforward" civil rights action under section 1983.  They note that they made an Offer of Judgement to Plaintiff, after the Court ordered counsel

---

[39] The Court wonders if Defendants took the time to consider whether they *should* be content with this.

appointed but before the actual appointment, that was only $35,000 less that the Offer Plaintiff ultimately accepted.  Defendants fail to note that it was their proclivity to fight tooth and nail on nearly every issue, including *eleven* separate motions for summary judgment, that contributed in large part to the passage of over four years between the first offer and the accepted offer. Defendants' attempts to paint this as a straightforward case, unnecessarily lawyered-up by Plaintiff's counsel, are entirely unavailing.  With that in mind, the Court addresses Defendants' thorough highlighting.

Defendants' first highlight a group of entries that they believe reflect "administrative" tasks that should not be compensable, at least not at the hourly rate of an attorney.[40]  They also note that several entries show that the attorneys did work that could have been accomplished by paralegals. Like Plaintiff, however, the Court struggles without further explanation by Defendants to see why these entries are objectionable.  The earliest entries Defendants highlight are those in which Mr. Seely had a telephone conference with the undersigned to discuss his appointment to this case, as well as Mr. Seely's correspondence regarding a conflicts check.  Neither of these fit within the label of an "administrative" task.  Nor do the numerous highlights of the legal work done by Ms. Clark, a paralegal, such as her preparation and filing of a subpoena or her work on various elements of the discovery in the case.    Defendants also cite no authority suggesting a clear demarcation between what tasks are fulfilled exclusively by paralegals, and for which an attorney cannot bill. The Court is satisfied by Plaintiff's explanation that several tasks that might have been done by paralegals were done by Mr. Vanorsby, a new associate, because either no paralegals yet worked

---

[40] *See Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1208 (D. Kan. 2002) ("The general premise of billing for paralegal work in these cases is that their fees are allowed if they are for tasks which would otherwise have been performed by a lawyer, but are disallowed if they are for tasks which would otherwise have been performed by a secretary or other clerical worker.").

on the case or because Mr. Vanorsby's familiarity with the case made his work on those tasks more efficient.  Without a better explanation from Defendants, the Court sees no reason to discount Plaintiff's hours for this reason.

Defendants also highlight various entries they describe as "general legal research," which they believe should not be billed.[41]  But a review of the highlighted entries reveals that these entries were not time spent on "general" research, but were actually spent on research to address specific legal issues raised in Defendants' motions or in response to developing issues in the case.  The Court finds no reason to discount this time.

The next target of Defendants' vicious highlighting pen are entries believed to represent "duplicate" time, or time in which both Mr. Seely and Mr. Vanorsby performed similar work, were present on calls, or were present at hearings or depositions.  The majority of the highlights appear to relate to Mr. Seely's and Mr. Vanorsby's simultaneous attendance at depositions.  The Tenth Circuit has cautioned against the duplication of services,[42] but has stated that "time spent by two attorneys on the same general task is not per se duplicative" as "careful preparation often requires collaboration and rehearsal."[43]  The presence of "more than one lawyer at depositions and hearings must be justified to the court" and fees should not be awarded for the attendance of lawyers "who are present at depositions, hearings, or trial for the purpose of being trained and who do not participate in or contribute to the proceedings."  The Court is satisfied by Plaintiff's explanation of why both Mr. Seely and Mr. Vanorsby were present at most of the depositions in this case, as

---

[41] *See Ramos*, 713 F.2d at 554 ("[T]ime spent reading background cases, civil rights reporters, and other materials designed to familiarize the attorney with this area of the law—time that would be absorbed in a private firm's general overhead and for which the firm would not bill a client.").

[42] *Ramos*, 713 F.2d at 554.

[43] *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir. 1998) (citation and alterations omitted).

Mr. Vanorsby assumed primary responsibility for the voluminous records in the case and whose assistance was necessary to assist Mr. Seely with the conduct of the depositions. Defendants' non-argument, apart from rote citation to caselaw, does not persuade the Court to discount this time as duplicative.

Defendants also attack the billing of interoffice conferences or communications, apparently as an extension of its argument against duplicative efforts of counsel.[44] This issue is often framed as a question of "good billing judgment."[45] But Defendants offer no persuasive explanation, again apart from rote citation to caselaw, as to why all interoffice conferences must be billed by only one attorney. This is especially true given that the function of such conferences is typically to apprise each lawyer of the other's work on disparate aspects of the shared case, and active participation is required of both of them.[46] And Plaintiff's counsel have shown good billing judgment as to these conferences. The time entries show that numerous conferences were not recorded by more than one lawyer. Thus, the Court will not reduce Plaintiff's reasonable hours on this basis.

Plaintiff proposes that the base fee figure, as shown above, should be reduced by 10% to account for the work done related to the RCPD Defendants. Plaintiff bases this on an analysis of the time entries and a reasonable estimate based on their experience with the case. The KHP Defendants respond that 10% is too low but fail to offer an alternative, and again put their

---

[44] *See United States ex rel. Awad v. Coffey Health Sys.*, 2019 WL 6910280, at *3 (D. Kan. 2019) ("The duplication of hours for conferences and inter-office meetings justifies a reduction.").

[45] *Oklahoma Nat. Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1263 (N.D. Okla. 2004) (citation omitted).

[46] *See Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1104 (N.D. Cal. 2008) ("A conference with only one participant is no longer a conference. The upshot of accepting [the defendant's] view would be to hold that all conferencing by Plaintiff's attorneys was excessive and duplicative.") (citation omitted)).

highlighting pen to work on Plaintiff's time entries. The Court notes that several of Defendants' highlights relate to work done regarding the case against KHP Defendants, such as the motion to amend to name the John Doe defendants, all of whom were employed by the KHP, and the response to the KHP Defendants' early motions for summary judgment. It appears once again that Defendants paint with much too broad a brush, or more accurately, a highlighter. After reviewing the time entries provided, and with an understanding of discovery and motions practice in this case, the Court agrees that 10% constitutes an appropriate reduction. The Court does not doubt that at least 90% of Plaintiff's counsel's time was spent on matters relating to the KHP Defendants, which included hotly contested discovery and a voluminous motions practice, including eleven separate motions for summary judgment by KHP Defendants. Thus, the Court agrees that the base fee reached above should be reduced by 10%, or $64,026.92. This leaves the lodestar fee as $576,242.28.

Finally, Defendant complains that several of Plaintiff's time entries contain "vague descriptions." Read in isolation, some of the time entry narratives (or parts of narratives) could be considered vague. But considered in light of the surrounding entries or the accompanying language of the narrative, it is clear that these "vague" entries, such as "analysis" or "review of file," are part and parcel of the preparation related to the more descriptive tasks that precede or follow them. No reduction is warranted on this basis.

In conclusion, the first step of the lodestar analysis leads the Court to conclude that Plaintiff's are entitled to the reasonable fee of $576,242.28.

3.      *Johnson Factors*

Defendants forego any discussion on the second step of the lodestar analysis, the *Johnson*[47] factors.  Still, the Tenth Circuit has directed the district courts to consider applicability of these factors and their influence on the reasonableness of the lodestar.[48]  "While the factors set out in *Johnson* are useful, some are seldom applicable, and none is self-actuating."[49]

The first three *Johnson* factors involve the time and labor required, the novelty or difficulty of the questions involved, and the skill required for the case.[50]  The Court agrees with Plaintiff that this was a complex lawsuit.  While the legal issues raised in a section 1983 excessive force claim are not necessarily novel, the amount of discovery with well over twenty Defendants, the contested nature of discovery as it related to KHP Defendants, and the extensive motions practice all weigh in favor of the reasonableness of the lodestar.

Plaintiff's counsel note that they were not precluded from other employment[51] by virtue of their representation of Plaintiff, but that the significant amount of time required by the case led both Mr. Seely and Mr. Vanorsby to decline representation in other matters.  The Court finds that this factor supports the reasonableness of the award.

The Court also may consider the customary fee and whether the fee is fixed or contingent in considering the reasonableness of the award.[52]  The fee in this case was contingent, meaning

---

[47] *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[48] *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998)

[49] *Id.* (quoting *Ramos*, 713 F.3d at 552) (alterations omitted).

[50] *Johnson*, 488 F.2d at 717-18.

[51] *Id.* at 718.

[52] *Id.*

counsel for Plaintiff were not guaranteed any payment for their services.  The significant risk involved supports the fee award.  Further, the hourly rate in this case was limited by the PLRA to 150% of the rate for court-appointed counsel.  Plaintiff suggests this may be an appropriate case for the Court to apply a multiplier to the lodestar based on the difference between the maximum rate under the PLRA and the typical billing rate of counsel.  While there is some variance in the hourly rate available and counsel's typical rate, the Court does not find that this is an appropriate case for the use of a multiplier.  In the cases cited by Plaintiff, a multiplier was used to bring an "exceptionally low" fee award up to a reasonable level.[53]  By contrast, the Court does not find that fees awarded here are not "exceptionally low."

Defendants repeatedly lambast the results obtained by Plaintiff as minimal compared to the requested relief in his complaint.  The Supreme Court has observed that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."[54]  Plaintiff states that while he initially sought millions of dollars in damages, the ultimate decision to settle the case was based in large part on the worry that a jury would not award him anything because of the surrounding circumstances (such as his status as a convicted felon for the attempted murder of a female victim).  Further, Plaintiff sought injunctive relief aimed at reforming the policies and procedures of Defendant law enforcement organizations.  Mr. Seely avers that once they had seen voluntary, affirmative steps by these organizations, Plaintiff was prepared to settle the case.  The Court is satisfied by this that the degree of success obtained supports the reasonableness of the lodestar amount.

---

[53] *Ginest v. Bd. of Cnty. Comm'rs of carbon Cnty., WY*, 423 F. Supp. 2d 1237, 1241 (D. Wyo. 2006); *see also Skinner v. Uphoff*, 324 F.Supp.2d 1278 (D.Wyo.2004).

[54] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation and internal quotations omitted).

The *Johnson* factors also direct the court to consider the experience, reputation, and ability of the attorneys in evaluating the reasonableness of the lodestar amount.[55]  This case was one of the unique situations where the Court ordered that counsel be appointed to represent Plaintiff's interests, an uncommon occurrence in a typical civil case.  The Court appointed Mr. Seely because of its respect and admiration for his experience and the capabilities of both himself and his law firm.  The Court thus easily finds that the experience, reputation and ability of the attorneys support the reasonability of the fee award in this case.

As to the remaining *Johnson* factors, the Court finds them inapplicable to the instant dispute.  Thus, the Court concludes that the *Johnson* factors support the award of the fee identified by the lodestar method, or $576,242.28.

### 4.     Proportionality

Defendants direct the Court back to the text of the PLRA to emphasize that "the amount of the fee" must be "proportionately related to the court ordered relief."[56]  Defendants rely on this language to again argue that the only proportional fee would be one limited to 150% of the monetary judgment.  The Court has already rejected this argument above and need not address it again.  But the Court does note that an inquiry into "proportionality" is not limited to a simply matter of comparing one number to another.  Rather, because "a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case,"[57] a large fee award is not necessarily disproportional to a relatively smaller monetary judgment.  Rather, in a case where a defendant mounts a "Stalingrad defense" and forces the plaintiff "to win her hard-earned victory

---

[55] *Johnson*, 488 F.2d at 718.

[56] 42 U.S.C.A. § 1997e(d)(1)(B)(i).

[57] *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992).

from rock to rock and from tree to tree,"[58] abundant staffing and hours spent by the plaintiff's counsel may be reasonable and proportionally related to the needs of the case, especially given that the plaintiff very likely would have won nothing were it not for the hours and hours spent by his counsel.  The KHP Defendants mounted a vigorous defense in this case, as already discussed, and counsel for Plaintiff necessarily spent a great deal of time fighting for every inch, every fraction of an inch, that ultimately led to the settlement.  The Court thus concludes that the fee award in this case is proportional to the monetary judgment award.

     5.    *Expenses*

Finally, Plaintiff seeks to recover $2,052.67 in costs as part of his request for attorney's fees.  "While only those items listed under section 1920 may be awarded as costs, other out-of-pocket expenses incurred during litigation may be awarded as attorneys fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable."[59]  Plaintiff seeks to recover costs for specialized Westlaw database searches ($602.50), internet access during depositions in remote locations ($225.00), telephone conferencing capabilities for the Rule 26(f) conference ($16.87), travel expenses for mileage ($1,105.48) and meals ($65.23), and for thumb drives of electronic records ($37.59).  The Court finds that each of these costs may normally be billed to a client,[60] and each is reasonable.

---

[58] *Id.*

[59] *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995) (citation omitted).

[60] *See, e.g., Godinet v. Mgmt. & Training Corp.*, 182 F. Supp. 2d 1108, 1114 (D. Kan. 2002), *aff'd*, 56 F. App'x 865 (10th Cir. 2003) (awarding costs for expenses associated with the use of Westlaw).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorney's Fees (Doc. 591) is **GRANTED in part DENIED in part.**  The Court orders the KHP Defendants to pay Plaintiff $576,242.28 in fees and $2,052.67 in costs.

**IT IS SO ORDERED.**

Dated this 19th day of July, 2022.


*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE